JANVIER, Judge.
The plaintiff, Fix-it-Shop, is a commercial partnership composed of Nathan Pil-iawaky and Robert Seibold. It is domiciled in New Orleans and is engaged in the business of selling merchandise at retail. It brought this suit against defendant, Carlton Roy, on a promissory note of $389.34, alleging that only $32 has been paid thereon, and that there is due a balance of $357.34, with legal interest from judicial demand. It also prayed for attorney’s fees of $53.60 as stipulated in the note.
It is alleged that the note was given for the purchase price of a television instrument which was sold to the defendant, Carlton Roy.
Roy, admitting the. execution' of the note sued on, denies liability, averring that “the purported contract of sale and the note and every other thing referred to * * * is null, void and of no effect for the reason that it was executed in contravention of a prohibitory law.”
There was judgment in favor of defendant dismissing the suit, and plaintiff partnership has appealed.
The record shows, and it is not disputed, that the instrument was sold and delivered and that the note was executed.
Defendant directs- attention to Regulation W of the Board of Governors of the Federal Reserve System of the United States, which regulation was adopted under authority of “section 5(b) of the Act of October 6, 1917, as amended, U.S.C., title 50, App., section 5(b) [50 U.S.C.A.Appendix, § 5(b)]; Executive Order No. 8843, dated August 9, 1941 [50 U.S.C.A. Appendix, § 2131 note] (hereinafter called the ‘Executive Order’) ; and the ‘Defense Production Act of 1950,’ [50 U.S.C.A.Appendix, § 2061 et seq.] particularly section 601 thereof.”
The particular provision of the Regulation W on which defendant relies is found in Group B of Part 1 of the supplement under which, in connection with the main portion of the regulation, it is required that a retailer shall not sell on the installment plan a television receiving set without receiving from the purchaser a down payment of at least 15 per cent'of the purchase *334 price. Defendant, pointing to this provision and declaring that no down payment was required of him, maintains that the entire transaction was null and void ab initio and that thus no liability can result, since the transaction was entered into in violation of a prohibitory law. In this contention he relies upon Article 12 of our LSA-Civil Code, which provides that:
“Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed.”
On the other hand, plaintiff maintains, in the first place, that there was a down payment in excess of the required amount in that another used television receiver, valued at more than IS per cent of the purchase price of the new receiver was given in trade and that therefore there was no violation of the provisions of the Regulation.
And plaintiff also maintains that even if no down payment at all was required that fact would not render the note uncollectible for the reason that the same regulation W which requires payment of 15 per cent and which provides certain criminal penalties for violation also in paragraph (c) of Section 8 provides as follows:
“(c) Enforceability of Contracts.— Except as may subsequently be otherwise provided, all provisions of this regulation are designated, pursuant to section 2(d) of the Executive Order, as being ‘for administrative purposes’ within the meaning of said section 2 (d), which provides that noncompliance with provisions of the regulations so designated shall not affect the right to enforce contracts.”
The first question presented,- of course, is whether or not there was a down payment in the form of a trade-in allowance on a used television receiver owned by defendant and delivered to plaintiff when the new receiver was purchased. A study of the record discloses no error in the finding of the District Judge that the sale was made without compliance with the regulation and that no portion of the purchase price was paid at the time of the sale. Plaintiff’s attempt to prove that a down payment of at least 15 per cent resulted from a trade-in by defendant of a used television receiver is not impressive, and we think that the District Judge was correct when he concluded that there was no such trade-in. In fact, in his argument, counsel for plaintiff devoted no time at all to a discussion of this question of fact and contented himself with arguing that, as a matter of law, the failure to require a down payment did not render the note uncollecti-ble.
Counsel for defendant concedes that paragraph (c) of section 8 expressly declares that such violation shall not affect the right to enforce the contract, but he argues that Article 12 of our LSA-Civil Code overrides and nullifies this provision and that, because our Code provides that whatever is done in contravention of a prohibitory law is null, that part of the regulation which is relied on by plaintiff can have no effect in law.
The legal question would be quite interesting and possibly very difficult of solution were it not for the fact that the regulation itself provides that the violation of its provisions “shall not affect the right to enforce contracts.”
It is, of course, well settled that, where' a contract is made in violation of a prohibitory law which law merely declares the illegality of such contract, if the thing which is prohibited is malum in se or contra bonos mores, it necessarily follows that there is no right to enforce such a contract. Such a situation is presented by miscege-netic marriages. LSA-Civil Code Art. 94. Other illustrations of cases of this type are found in Fenn v. Carr, 19 La.Ann. 106, in Cotton v. Brien, 6 Rob. 115, and in Gillard v. Huval, 22 La.Ann. 426.
These three cases grew out of the sale of slaves after the adoption of constitutional provisions making it no longer possible for slaves to be susceptible of “ownership.” In each of them the object of the contract was something which, according to the Con *335 stitution, in the one case of Mississippi, and in the other cases of Louisiana, it was against public policy, contra bonos mores, in fact no longer possible that one person be “owned” by another. It necessarily followed that a contract to deliver the ownership of something which could not be owned was held to be unenforceable.
There are also cases in which it has been held that there can be no enforcement of a contract though it does not involve something which is malum in se or contra bonos mores if it does involve the violation of a prohibitory law. For instance, in Ronaldson v. Moss & Watkins, Inc., 13 La.App. 350, 127 So. 467, 469, the Court of Appeal for the First Circuit refused to allow an accountant to recover for his services when it appeared that, though he had been licensed to practice his profession in another state, he had not been licensed to practice here and was, therefore, practicing in violation of a Louisiana statute. The Court, in commenting upon the fact that the statute provided for criminal prosecution for its violation in disallowing plaintiff’s claim, said:
“Where the law does not contain the prohibition but imposes a penalty for its violation, it seems to be generally held that the penalty implies the prohibition. The decisions to that effect are based on the well-known principle that ‘the law will not lend its support to a claim founded upon its violation.’
“It would seem to be somewhat anomalous to have a court exercising criminal jurisdiction pronounce a man a criminal and inflict the penalty of the law on him, and then turn around and, sitting as a civil court, let that same man reap the benefit of the same act for which it had just punished him.
“In 13 Corpus Juris, p. 421, § 352, we read: ‘Frequently a statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void. In cases of this kind the decisions of the Court are not in harmony. The generally announced rule is that an agreement founded on or for the doing of such penalized act is void. * * * ’ ”
In J. C. Yochim Co., Inc., v. Piper’s Estate, La.App., 192 So. 140, we held that a wholesale liquor dealer who did not have a retail license could not recover for retail sales made in violation of a statute which provided that such retail dealer must have a license.
In Tulane Law Review, Vol. 8, at page 184, is found a discussion of various types of cases in which the courts have refused to enforce contracts made in violation of prohibitory laws.
However, there is considerable authority for the view that, where a criminal statute imposes specific penalties for its violation, if the thing prohibited is not malum in se, unless the statute declares that contracts made in violation thereof shall be unenforceable, it is to be inferred that it was not the intention of the lawmakers to render such contracts unenforceable.
In Guffey-Gillespie Oil Co. v. Wright, 281 F. 787, 789, the United States Circuit Court of Appeals for the Eighth Circuit discussed this question and stated that “The rule seems well established by decisions of our national courts”, the rule referred to being stated as follows:
“When a (criminal) statute imposes specific penalties for its violation, where the act is not malum in se, and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference is that it was not the intention of the lawmakers to render such contracts illegal and unenforceable.”
In Reconstruction Finance Corporation, v. Central Republic Trust Co., 17 F.Supp. 263, 265, in a decision by the United States District Court for the Northern District of Illinois, the following appears as syllabus No. 19:
“In passing on contracts made in contravention of statute, court should carefully consider object of statute, *336 evil it was enacted to remedy and effect of holding contract in violation of statute void, and if it is manifest from such consideration that Legislature did not intend to make contract void, contract should he sustained and enforced.”
In affirming the judgment rendered in that case the United States Circuit Court of Appeals for the Seventh Circuit, Reconstruction Finance Corp. v. McCormick, 102 F.2d 305, 322, said:
“ * * * To permit those who are benefited through the violation of the statute to avoid their loan obligations would not only defeat the main purpose of the enactment, but would visit the consequences of the unlawful acts of officers not on themselves but on the plaintiff for whose protection the statute was made. The test usually applied is this—Does the statute in addition to prohibiting action by corporate officers, declare the contract negotiated in violation of said prohibition, to be null and void?”
We think that the general rule on the question of whether contracts, though entered into in violation of prohibitory laws, should be enforced is properly set forth in 17 C.J.S., Contracts, § 202, page 557, as follows:
“Where a statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void, the generally announced rule is that an agreement founded on or for the doing of such penalized act is void.”
Where the statute expressly declares that the violation thereof shall entail penalties but shall not render the contract unenforceable, the general rule seems to be that the contract made in violation thereof shall be enforceable. This rule is found in 17 C.J.S., Contracts, § 204, page 559:
“Although an agreement may be prohibited by statute, yet if the statute declares also that it shall not be void, then it is enforceable by the courts; * *
Our conclusion is that, where the law itself or the regulation which declares the object of the contract to be illegal, expressly also declares that though penalties may be enforced for its violation, nevertheless a contract made in violation shall be enforceable, there is no reason to refuse to enforce such a contract unless the object of the contract is malum in se.
The contract from which this suit results was not malum in se, it was not contra bonos mores, it was merely malum prohibitum and the same regulation which prohibited it also declared that the contract should be enforceable. Our conclusion is that such contract is not contemplated by Articles 12, 1893 or 1895 of our LSA-Civil Code. Consequently we conclude that plaintiff should have judgment for such amount as may be due under the contract.
Accordingly it is now ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and that there now be judgment in favor of plaintiff, Fix-it-Shop, and against defendant, Carlton Roy, in the full sum of $357.34, with legal interest from judicial demand, and for attorney’s fees at $53.60, and for all costs.
Reversed.