583 So.2d 1227 (1991)
Scott Gerard HENDERSON
v.
KENTWOOD SPRING WATER, INC., Kentwood Spring Water, and Suntory International Water Group.
No. 90 CA 0642.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
*1229 Linda L. Holliday, Baton Rouge, for plaintiff-appellee Scott Gerard Henderson.
Pamela Sweeney, New Orleans, for defendant-appellant Kentwood Spring Water, Inc.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
Defendant, Kentwood Water, Inc. (Kentwood),[1] appeals a trial court judgment in favor of its employee, Scott Henderson, awarding Mr. Henderson wages, penalties, and attorney's fees under the wage payment statute, LSA-R.S. 23:631, et seq.

FACTS
Mr. Henderson was employed by Kentwood as a route salesman on March 13, 1989. At the time he was employed, he signed a policy manual explaining Kentwood's *1230 system of wage payment and agreeing to accept his final paycheck within two to four weeks of his termination. According to Kentwood's policies, route salesmen are paid straight commissions and are responsible for uncollected accounts receivable on their routes. However, to insure its salesmen a consistent paycheck, Kentwood establishes a reserve account which is funded from the salesmen's commissions at a rate of ten per cent per pay period. Any debts which are determined to be uncollectable after 120 days are deducted from the reserve account. The salesman's reserve account is audited once a year, and the salesman is paid from the reserve account any amounts over $400.00. When a salesman is terminated, he is paid any amount remaining in his bonus reserve but not until 120 days after his termination. In addition to commissions, Kentwood also offers two incentive programs to its salesmen: (1) a salesman may increase his percentage of commission above the base rate by maintaining his accounts receivable at a certain level, and (2) a salesman may earn a subsidy for obtaining new accounts.
Daily inventories are performed on the route trucks to confirm the amount of water sold. These inventories are relayed to the home office in New Orleans where the commissions are computed. It takes three to four days to post the inventories for each delivery date. These computations are forwarded to a firm in Atlanta, Georgia, which writes the payroll checks and makes necessary deductions such as tax withholdings. Wages are paid every two weeks for the pay period ending two weeks prior to receipt of the paycheck.
Plaintiff was terminated on Monday, September 25, 1989, for poor work performance; he demanded his wages at that time. On Friday, September 29, plaintiff received a check for the pay period ending September 17, 1989. The check included deductions of the following amounts: a lost hand-truck ($87.30); amounts due on uniforms ($125.73); and an overpayment from a previous paycheck ($27.93). His commission for the subsequent pay period, September 18October 1, of which he worked three days, was not paid until October 20. Neither of these paychecks included any amounts from the reserve account which, at the time of termination, totaled $450.00.
Mr. Henderson filed suit on October 5, 1989, alleging Kentwood's failure to pay him his final wages within 72 hours of his termination, and its wrongful withholding of $690.00 of earned wages.
The trial court, without written or oral reasons, awarded plaintiff $690.76[2] in past wages; $3150.00[3] in penalties; $750.00 in attorney's fees, and all costs of the proceedings. Kentwood appeals, alleging that the trial court erred in awarding plaintiff past wages, penalties, and attorney's fees.

WAGE DEDUCTIONS
The first issue presented is whether defendant wrongfully withheld money from plaintiff's wages to recompense defendant for lost equipment, uniforms, and overpayment from a previous paycheck. Kentwood alleges that the deductions from plaintiff's paycheck for the lost hand-truck, uniforms, and overpayment were justified because they were valid debts which the plaintiff owed. Kentwood contends that the plaintiff lost a hand-truck which the company loaned to him and that the plaintiff owed a balance of $125.73 on the uniforms which he ordered through Kentwood.
At trial the plaintiff testified that he did not know what happened to the allegedly lost hand-truck. He stated that on the last day he worked the hand-truck was on his truck, and that the truck remained on Kentwood property when he left for the day. The plaintiff also testified that he was not aware that he was responsible for the purchase of work uniforms. The policy manual introduced into evidence did not specifically provide for the purchase of uniforms *1231 by an employee, nor did the manual address the issue of lost equipment other than water coolers, bottles, and crates. Mark Charles Mathews, plaintiff's immediate supervisor, testified that he asked the plaintiff about the hand-truck and that the plaintiff stated he did not know what happened to it but that perhaps he left it at one of the stops on his route. The plaintiff's uniforms were purchased through the company, and according to Olga Jessica Pellegrin, the manager of disbursements, the cost of the uniforms would be deducted from the employee's paycheck. The uniform purchase order admitted into evidence was signed by Mr. Noel, the plaintiff's supervisor, and not by the plaintiff. Ms. Pellegrin also testified that an accounting error on plaintiff's previous paycheck resulted in an overpayment to the plaintiff of $27.93 which she deducted from his September 29th paycheck. The testimony concerning the overpayment was uncontroverted.
Whether the deductions made by Kentwood were valid are matters of fact which we will not disturb absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). When testimony conflicts, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In light of plaintiff's testimony that he was unaware of the company policies requiring employees to purchase their own uniforms and pay for lost equipment, together with the fact that the written documentation detailing company policies and procedures does not specifically mention these policies, we believe that the trial court's judgment awarding to the plaintiff the amounts for the lost equipment and the uniforms is adequately supported by the record. The defendant did not establish its right to the deductions nor did it establish that the plaintiff wilfully consented to the deductions. See McCoil v. West Enterprises, Inc., 552 So.2d 1302 (La.App. 5th Cir.1989). However, the trial court's award to the plaintiff of the amount of the overpayment from a previous paycheck was clearly wrong, as the testimony regarding the overpayment was uncontroverted.

RESERVE ACCOUNT
Because the trial of this matter was held on November 17, 1989, fifty-three days after plaintiff's termination, Kentwood contends that plaintiff was not entitled to the amount in the reserve account awarded by the trial court. We agree.
At the time of the trial no evidence was introduced by Kentwood to verify that any accounts receivable were owed on plaintiff's accounts. However, the Kentwood policy manual expressly sets forth the procedure for collecting bad debts and provides that the reserve account will be retained until an audit is performed one hundred twenty days post termination.[4]
We conclude that the trial court erred in awarding the plaintiff any amounts from the reserve account. Kentwood's policy manual clearly sets forth the procedures for bad debts, and the plaintiff testified that he understood these procedures when he was employed by Kentwood. We remand the case to give the plaintiff the opportunity, now that the one-hundred-twenty-day period has expired, to establish his claim for any amounts in the reserve account.

PENALTIES
LSA-R.S. 23:631 imposes a duty on employers to pay an employee who is discharged or resigns the amount then due under the terms of his employment, "whether the employment is by the hour, day, week or month," within three days following the discharge or resignation period. LSA-R.S. 23:632 imposes penalties and *1232 attorney's fees on those who do not pay in the manner directed by LSA-R.S. 23:631.
It is well settled that the statutory provisions are penal in nature and must be strictly construed. Equitable defenses are available, and penalty wages are not to be absolutely imposed irrespective of the circumstances. Pace v. Parker Drilling Co. & Subsidiaries, 382 So.2d 988 (La. App. 1st Cir.), writ denied, 383 So.2d 1016 (La.1980). However, it is only a good-faith, non-arbitrary defense to liability for unpaid wages which will permit the courts to excuse the employer from the imposition of penalty wages. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978) and Soday v. Mall Snacks, Inc., 374 So.2d 138 (La.App. 1st Cir.1979). Whether or not there is an equitable defense to penalty wages depends on the particular facts of each case. Pace, 382 So.2d 988.
Generally, when there is a good-faith question of whether the employer actually owes past-due wages or whether there may be an offset to wages owed, resistance to payment will not trigger penalty wages. However, when an employer is arbitrary or sets out procedural pitfalls for the employee or is merely negligent in failing to pay past-due wages, penalty wages will be assessed. Pace, 382 So.2d 988.
Kentwood contends that it is not liable for penalties under LSA-R.S. 23:631 because an offset against an employee's wages for valid debts owed to the employer is a good-faith defense under LSA-R.S. 23:631, thereby precluding the imposition of statutory penalties.
Neither an equitable defense for non-payment of the amounts deducted from plaintiff's paycheck, nor an equitable defense for refusing to pay the amounts in plaintiff's reserve account will avail Kentwood if Kentwood lacked a good-faith, non-arbitrary defense to liability for refusing to issue plaintiff's final paycheck for the undisputed wages it owed to plaintiff. Although there may have been a valid dispute over the deductions and the amount in the reserve account, there was no dispute over the base commissions due plaintiff. Defendant has never claimed that it does not owe these amounts.
The facts of the instant case establish that no wages were paid within the 72-hours as required by LSA-R.S. 23:631. Kentwood's only defense for its failure to comply with the law is its company policy of issuing paychecks two to four-weeks after resignation or termination. Kentwood asserts that it was justified in delaying payment because the plaintiff signed an agreement consenting to the delay of his final paycheck. Kentwood further contends that the two to four week time period was needed in order to verify new accounts and determine whether the plaintiff qualified for a higher percentage commission or a subsidy for soliciting new accounts.
Our review of the jurisprudence reveals that the courts have consistently held that an equitable defense is not available when the failure to pay wages due according to the statute is attributable to neglect or improper pay procedure. Duhon v. Prof. Erny's Music Company, Inc., 328 So.2d 788 (La.App. 3d Cir.1976); McCaskill v. Deviney Construction Company, 323 So.2d 178 (La.App. 3d Cir.1975), writ denied, 325 So.2d 615 (La.1976); Young v. White Stores, Inc., 269 So.2d 266 (La.App. 3d Cir.1972); Hendrix v. Delta Air Lines, Inc., 234 So.2d 93 (La.App. 4th Cir.), writ denied, 256 La. 364, 236 So.2d 498 (La. 1970). Compare Menard v. Roy Young, Inc., 441 So.2d 28 (La.App. 3d Cir.1983), writ denied, 444 So.2d 122 (La. 1984).
The only distinguishing factor in the instant case is the fact that the plaintiff signed an agreement waiving his rights under LSA-R.S. 23:631. It is the validity of this agreement which is called into question.
While it is true that persons may waive personal rights that the law has established, they cannot by their contracts violate prohibitory law or derogate from law enacted for the protection of the public interest. LSA-C.C. art. 7. "Any act in derogation of such laws is an absolute nullity." Id. We believe that LSA-R.S. 23:631 is such a prohibitory law. Where a *1233 statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void, generally an agreement founded on or for doing of such penalized act is void. Fix-It-Shop v. Roy, 68 So.2d 332 (La.App. Orleans 1953); Ronaldson v. Moss Watkins, Inc., 13 La. App. 350, 127 So. 467 (La.App. 1st Cir. 1930). We further find that the agreement has the direct effect of thwarting the legislative intent behind LSA-R.S. 23:631, which was enacted for the protection of the public interest. See Elliott v. General Gas Corporation, 229 La. 128, 85 So.2d 55 (La. 1956). Consequently, the agreement is void as a matter of law and may not support an equitable defense under LSA-R.S. 23:631.
Although we conclude that the agreement to postpone the payment of undisputed wages is void as against public policy, we do not consider the agreement to withhold the amounts in the reserve account for 120 days post-termination to be against public policy. Generally agreements holding employees responsible for customer debts are not prohibited and can support an equitable defense for nonpayment of wages. See Jones v. Hebert & LeBlanc, Inc., 499 So.2d 1107, 1109 (La. App. 3d Cir.1986); Yancey v. Dickson Ice Cream Co., 190 So. 837 (La.App. 2d Cir. 1939). Accordingly we find that the agreement to withhold the amounts held in the reserve account are not prohibited and consequently the amounts withheld were not due and owing at the time of termination pursuant to LSA-R.S. 23:631.
We also find no merit in Kentwood's contention that it was justified in delaying plaintiff's check because it required additional time to verify new accounts and determine whether the plaintiff was entitled to an increased percentage of commissions. From the testimony of Kentwood's employees it is clear that Kentwood was capable of paying plaintiff's base commissions within three days following his termination; any additional amounts earned pursuant to an incentive program were speculative, and plaintiff could not have complained had they been withheld until the next scheduled payday. We do not consider the withholding of undisputed wages for the purpose of determining whether plaintiff was entitled to increased commissions a valid, equitable defense to penalty wages in this case. An employer must pay the undisputed portion of an employee's wages within the 72-hour time limit, even though he disputes the remainder, in order to escape the imposition of penalty wages. Duhon, 328 So.2d 788.

ATTORNEY'S FEES
Kentwood acknowledges that attorney's fees are recoverable in any well-founded suit for unpaid wages. Soday, 374 So.2d 138; Carriere, 364 So.2d 555. In light of our conclusions that the commissions and penalty wages were due, we find that attorney's fees were properly awarded. Finally, we address plaintiff's request for additional attorney's fees for the work performed on this appeal. This request, which was made in plaintiff's brief, may not be considered by this court as plaintiff did not appeal or answer the appeal. LSA-C.C.P. 2133. Celestin v. Fireman's Fund Ins. Co., 430 So.2d 1263 (La.App. 1st Cir. 1983); McCaskill, 323 So.2d at 181.
For the foregoing reasons, the judgment of the trial court is amended to reduce the plaintiff's award for past wages by the amount of $477.93, representing the $27.93 overpayment and the $450.00 from plaintiff's reserve account. As amended the trial court's judgment is affirmed. We remand the case for a determination regarding the amounts withheld in the reserve account. All costs to be paid by defendant.
AMENDED IN PART AND AFFIRMED AS AMENDED; REMANDED IN PART.
NOTES
[1] Plaintiff also named as a defendant Suntory International Water Group, Inc., the parent corporation of Kentwood.
[2] Presumably this amount represents the deductions made from the September 29th paycheck as well as the $450.00 balance of the reserve account.
[3] We are unable, from the record before us, to determine the correctness of the amount of penalty wages. However, because the amount has not been contested we will assume it is correct.
[4] Kentwood alleges in brief that since the trial a post-termination audit was conducted and plaintiff's account was completely depleted by bad debts attributable to his customers. We are without authority to consider this evidence, as it is outside the record, and we are without jurisdiction to receive new evidence. Sutton v. Montegut, 544 So.2d 1181 (La.App. 5th Cir.1989).