STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-934 consolidated with  10-1393


JOHN GOULAS AND VERNON WILKINS

VERSUS

B & B OILFIELD SERVICES, INC.

consolidated with

JOHN GOULAS, ET AL.

VERSUS

B & B OILFIELD SERVICES, INC.


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 115978, "DIVISION "H""
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, James David Painter, James T. Genovese, and Shannon J. Gremillion, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**


**Ezell, J., concurs in the result for the reasons assigned by Judge Genovese.**
**Painter, J., concurs in the result for the reasons assigned by Judge Genovese.**
**Genovese, J., concurs in the result and assigns written reasons.**
**Gremillion, J., concurs in part, dissents in part, and assigns written reasons.**

**Bernard E. Boudreaux, Jr.**

**Peter J. Butler, Jr.**

**Richard Gary Passler**

**Breazeale, Sachse & Wilson, L.L.P.**

**909 Poydras Street, #1500**

**P. O. Box 3197**

**New Orleans, LA 70112-4004**

**(504) 584-5454**

**Counsel for Defendant/Respondent:**

**B & B Oilfield Services, Inc.**

**Alan K. Breaud**

**Timothy Wayne Basden**

**Breaud & Meyers**

**P. O. Drawer 3448**

**Lafayette, LA 70502**

**(337) 266-2200**

**Counsel for Plaintiffs/Applicants:**

**John Goulas**

**Vernon Wilkins**

**SAUNDERS, Judge.**

This is a case where two employees filed an unpaid wage claim against their employer under La.R.S. 23:631 and La.R.S. 23:632. The employer filed an exception of unauthorized use of summary proceedings based on the assertion that both employees' claims for unpaid wages were novated, one by written agreement, the other by oral agreement.

The trial court found that both employees entered into novations with their employer, granted the employer's exception, and dismissed the employees' claims for unpaid wages. The employees appeal. We affirm in part, reverse in part, and render.

**FACTS AND PROCEDURAL HISTORY:**

Johnny Goulas (Goulas) and Vernon Wilkins (Wilkins) were salesmen at B&B Oilfield Services, Inc. (B&B,) and each earned a $10,000.00 monthly salary plus commissions. For all sales generated by Goulas and/or Wilkins, they earned a joint, four percent (4%) commission that was equally divided between them.

B&B had a regular procedure of deferred payment of commissions where all commissions earned quarterly were totaled, then dispersed in equal installments two quarters later. According to the parties, this deferment allowed for the money generated from the sales to be collected prior to the commissions being dispersed.

Goulas and Wilkins worked for B&B from January 2005 until 2009, at which time both resigned at differing points. B&B owed commissions to each Goulas and Wilkins when they resigned.

Wilkins resigned on January 5, 2009. According to B&B, Wilkins agreed to be paid his salary and benefits until March 31, 2009, in lieu of the outstanding commissions B&B owed to him, and Wilkins was paid as such prior to this litigation. Wilkins asserts that he remained on B&B's staff while also performing his new job

at a different company and that his pay from January through March of 2009 simply reflected his agreed-upon salary for the work he was actually doing for B&B during that time.

Goulas resigned on July 6, 2009. Goulas and B&B entered into a post-resignation agreement whereby B&B would pay Goulas his commissions in six, equal, monthly installments rather than pay the entire amount of his outstanding commissions collectively. B&B paid the first installment, then transferred a building to Goulas in lieu of the second installment. B&B failed to make any other payments to Goulas.

On February 4, 2010, Goulas and Wilkins filed a petition for unpaid wages, penalty wages, and attorney fees as a summary proceeding under La.R.S. 23:631 and La.R.S. 23:632, setting the matter for trial on a rule to show cause. On March 24, 2010, B&B responded by filing a dilatory exception of unauthorized use of summary proceedings.

On March 30, 2010, the parties agreed to the trial court hearing the merits of both Goulas and Wilkins' petition and B&B's exception simultaneously. At the hearing, the trial court heard testimony from Goulas, Wilkins, and three former employees of B&B. On May 24, 2010, the trial court issued a judgment that granted B&B's exception with respect to both Goulas and Wilkins. It did so based on its finding that novation extinguished B&B's wage debts to each and substituted in the wage debts' place a different type of debt whose recovery is not authorized to be sought via summary proceedings. The trial court's judgment also dismissed Goulas and Wilkins' petition. Goulas and Wilkins now appeal this May 24, 2010 judgment.

2

**ASSIGNMENTS OF ERROR:**

Goulas and Wilkins assert five assignments of error. Therefore, we must decide whether:

1.  The trial court erred in granting the exception of unauthorized use of summary proceedings and dismissing the petition for unpaid commissions (wages) and for penalty wages and attorney fees.

2.  The trial court erred in ruling that John Goulas and Vernon Wilkins entered into novation contracts which extinguished the obligations of B&B Oilfield to pay commissions.

3.  The trial court erred in denying the petition rather than ordering that any deficiency subject to the dilatory exception be cured through amendment.

4.  The trial court erred in ruling that the filing of suit did not constitute demand for the Louisiana Wage Law, La.R.S. 23:631, et seq.

5.  The trial court erred in not awarding commissions as wages, including penalty wages and attorney fees to John Goulas and Vernon Wilkins.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Goulas and Wilkins contend in their first assignment of error that the trial court erred in granting B&B's exception of unauthorized use of summary proceedings. We agree.

Whether the trial court was correct in granting B&B's exception raises a question of law. Questions of law are subject to a de novo review of whether the trial court was legally correct in its finding. *Guillory v. Allied Waste Indus., Inc.*, 10-159 (La.App. 3 Cir. 10/6/10), 47 So.3d 23.

Louisiana Code Civil Procedure Article 2592(12) authorizes the use of summary proceedings in all matters in which it is permitted. An employee is granted the right to proceed against an employer for a wage claim via summary proceeding,

3

and commissions are "wages" under La.R.S. 23:631.  See *Dugas v. Aaron Rents, Inc.*, 02-1276 (La.App. 3 Cir. 3/5/03), 839 So.2d 1205; *Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 165 (La.App. 3 Cir. 1992).

It is clear from Goulas and Wilkins' petition that they are entitled to summary proceedings.  Both alleged that they were employees of B&B and that they were owed commissions upon termination that each was not paid.  Therefore, it is clear when reading La.Code Civ.P. art. 2592(12) and La.R.S. 23:631 together that the trial court erred in granting B&B's exception.  As such, we reverse the trial court in this regard.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In their second assignment of error, Goulas and Wilkins assert that the trial court erred in ruling that a novation occurred between them and B&B, respectively, which extinguished the obligations of B&B to pay commissions.  The trial court based its granting of B&B's exception on its finding that both Goulas and Wilkins entered into novations with B&B. We have already determined that the trial court was legally incorrect in granting B&B's exception.  Therefore, this assignment of error is moot.

**ASSIGNMENT OF ERROR NUMBER THREE:**

Goulas and Wilkins contend that the trial court erred in denying their petitions rather than ordering that any deficiency subject to the dilatory exception of unauthorized use of a summary procedure should have been allowed to be cured through amendment.  Our finding in assignment of error number one that Goulas and Wilkins' petition can be properly adjudicated through summary proceedings pretermits this assignment of error.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

4

Goulas and Wilkins, in their fourth assignment of error, contend that the trial court erred in ruling that the filing of suit did not constitute a demand for wages under La.R.S. 23:631 and La.R.S. 23:632. We need not address this assignment of error.

Our review of the trial court's judgment and reasons for judgment indicates no finding by the trial court regarding whether proper demand was made by Goulas and Wilkins for purposes of La.R.S. 23:631 and La.R.S. 23:632. The trial court's judgment is silent on the issue. Moreover, the trial court's reasons for judgment only reference Goulas failing to demand commissions upon separation as evidence that it found tended to show Goulas' intention to novate, not that Goulas failed to make proper demand of B&B for purposes of La.R.S. 23:631 and La.R.S. 23:632.

**ASSIGNMENT OF ERROR NUMBER FIVE:**

Finally, Goulas and Wilkins assert that the trial court erred in not awarding each commission as wages, penalty wages, and attorney fees. We find merit in this assignment.

The trial court did not address the issues raised in the assignment of error due to its erroneously granting B&B's exception of unauthorized use of summary proceedings. However, "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P. art. 2164. The Louisiana Supreme Court, in *Gonzales v. Xerox Corp.*, 320 So.2d 163, 165-66 (La.1975) (citations and footnote omitted), stated the following:

> While the trial court remains the original forum for resolving factual and legal issues, the Louisiana Constitution expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law. . . .
>
> In addition to the constitutional authority, and consistent with it, there is a very practical consideration which encourages our appellate courts to exercise their jurisdiction to review factual findings: judicial

5

economy. When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process. Although the appellate court does not gain the benefit of personally viewing the witnesses, it does have a complete record and the constitutional authority to decide.

A full hearing on the merits of Goulas and Wilkins' petition was held. Goulas, Wilkins, and B&B submitted exhibits and testimony regarding the facts surrounding the issues, and no party contends that there is any other evidence available that is relevant to the adjudication of the issues before us. Thus, we find that the record is complete with regard to the issues presented by Goulas and Wilkins' petition.

**Discussion of the Merits - Goulas:**

The facts surrounding Goulas' petition are not in dispute. B&B admitted that it owed Goulas earned commissions when he resigned. Goulas and B&B signed a post-resignation agreement wherein B&B acknowledged that it owed Goulas six, equal installments of $10,127.79 to be paid monthly. B&B paid the first installment as directed by the post-resignation agreement. Goulas then accepted a building from B&B in lieu of the second installment. Thereafter, B&B paid no other installments to Goulas. B&B has candidly admitted that it owes Goulas the final four payments made under the post-resignation agreement totaling $40,511.16. B&B's argument is that should Goulas' action be converted to ordinary proceedings, they would be entitled to a set-off based on a suit that, according to the state of the record, is still pending against Goulas. Nevertheless, it is clear that Goulas is entitled to summary proceedings by virtue of La.R.S. 23:631(B).[1]

---

[1] Louisiana Revised Statutes 23:631(B) states, in pertinent part, "[t]he employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to [Louisiana] Code of Civil Procedure Article 2592." Louisiana Code Civil Procedure Article 2592(12) authorizes the use of summary proceedings in all matters in which it is permitted.

Goulas' petition alleges that he is entitled to unpaid wages, penalty wages, and attorney fees under La.R.S. 23:631 and La.R.S. 23:632. Louisiana Revised Statutes 23:631(A)(1)(b) states:

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Revised Statutes 23:632 states:

> Any employer who fails or refuses to comply with the provisions of [La.]R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

*Commissions as Wages - Goulas*:

It is clear that B&B owes Goulas wages in the form of his commissions. B&B admits that it owes Goulas the final four payments made under the post-resignation agreement totaling $40,511.16. Thus, we render judgment awarding Goulas that amount as wages.

*Penalty Wages - Goulas*:

In order to be awarded penalty wages under La.R.S. 23:632, the plaintiff must "show that (1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Hebert v. Ins. Ctr., Inc.*, 97-298, p. 9 (La.App. 3 Cir. 1/7/98), 706 So.2d

1007, 1013, *writ denied*, 98-353 (La. 3/27/98), 716 So.2d 888.

Goulas has met these three criteria. B&B has admitted that Goulas' wages or commissions are due. He has made proper demand of what B&B admittedly owes him, and B&B has not remitted these wages or commissions to Goulas.

The language of La.R.S. 23:632 seemingly is such that penalty wages are mandatory regardless of any equitable defenses presented by an employer. However, the language has been interpreted otherwise. Our supreme court, in *Wyatt v. Avoyelles Parish School Board*, 01-3180, 02-131, 02-259, p. 15 (La.12/4/02), 831 So.2d 906, 916-17, pronounced:

> [Louisiana Revised Statutes] 23:632 is a penal statute that must be strictly construed and may yield to equitable results. *Beard* [*v. Summit Inst. of Pulmonary Med. & Rehab., Inc.*], 97-1784[,] at p. 7 [(La. 3/4/98)], [707] So.2d [1233] at 1236 (citing *Bannon v. Techeland Oil Corp.*, 205 La. 689, 693, 17 So.2d 921 (1944)). This court has previously stated that "a good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" permits a court to decline to impose penalty wages on an employer. *Beard*, [] 707 So.2d at 1236 (citing *Carriere v. Pee Wee's Equipment Co.*, 364 So.2d 555, 557 (La.1978)).

Given this directive by our supreme court, we must look to whether B&B has any non-arbitrary, good-faith defense or reasonable basis for not paying Goulas his earned commissions. Louisiana courts have opined that a determination of whether an employer has an equitable defense under La.R.S. 23:631 and La.R.S. 23:632 is dependant on the facts of each case and should be recognized if greater justice will be served by the refusal to award penalty wages. *Becker v. Choate*, 204 So.2d 680 (La.App. 3 Cir. 1967), *overruled on other grounds by Carriere*, 364 So.2d 555.

B&B first asserts as an equitable defense that it is entitled to a set-off with Goulas for the remaining outstanding commissions. We find this assertion lacks merit.

8

B&B has not produced any evidence of set-off other than vague testimony from Jeff Jeurgens, then chief executive officer of B&B, alluding to certain actions by Goulas. This court is aware that another matter is pending between Goulas and B&B. However, the record contains no description of what exactly that matter entails nor any evidence showing a likelihood of success by B&B in obtaining a judgment for damages against Goulas to act as a set-off to what B&B clearly owes Goulas.

This court can only consider items in the record before it. La.Code Civ.P. art. 2164. The record contains no evidence of a likely set-off between Goulas and B&B. Accordingly, given the framework from which this issue is to be adjudicated, we cannot say that the greater justice is in denying Goulas penalty wages based on a potential set-off between he and B&B.

Next, B&B asserts that it has an equitable defense in that the post-resignation contract with Goulas evidences a good-faith belief that any claims by Goulas under La.R.S. 23:631 and La.R.S. 23:632 were satisfied via novation. We find this assertion to be without merit.

Louisiana Civil Code Article 1879 states that "[n]ovation is the extinguishment of an existing obligation by the substitution of a new one." "The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed." La.Civ.Code art. 1880.

> Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation.

> Novation takes place also when the parties expressly declare their intention to novate an obligation.

> Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execution of a new writing,

9

the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.

La.Civ.Code art. 1881.

This court, in *Placid Oil Co. v. Taylor*, 325 So.2d 313, 316 (La.App. 3 Cir. 1975), *writ denied*, 329 So.2d 455 (La.1976), stated the following:

> The determining factor in deciding whether a novation has been effected is the intention of the parties. The intention to novate may be shown by the character of the transaction, and by the facts and circumstances surrounding it, as well as by the terms of the agreement itself. The burden of proof to establish novation is on the person who claims it. *Antoine v. Elder Realty Company*, 255 So.2d 625 (La.App. 3 Cir. 1971); *Midlo & Lehmann v. Katz*, 195 So.2d 383 (La.App. 4 Cir. 1967).

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046.

The trial court found that the post-resignation agreement constituted a novation between Goulas and B&B because it indicated a clear expression by Goulas of his intent to extinguish B&B's debt to him under his employment contract, to create a new debt between him and B&B, to distinguish between old and new debt, and to novate. We do not agree.

The post-resignation agreement between Goulas and B&B first contains an accounting of what B&B owes to Goulas under the terms of Goulas' employment contract. Next is the following language:

> I, Johnny Goulas, agree to the amount stated above of $60,766.75 as the complete and final amount of commission due from B&B Oilfield Services, Inc. I agree to (6) six monthly installments of $10,127.79 to be paid on the 29th of each month, commencing on July 29, 2009. B&B Oilfield Services, Inc. reserves the right to withhold any commission that has not been paid by any of the customers listed above. In the event of a change in control or ownership, the remaining unpaid commission

10

will immediately become due and will be paid ten (10) days later.

We find that the language of the post-resignation agreement is clear and explicit. In that agreement there is no expression by Goulas of his clear and unequivocal intent to extinguish B&B's debt to him under his employment contract. Further, the language cited above does not contemplate creation of a new debt between Goulas and B&B, nor does it contain an expression of Goulas' intent to novate. The language merely modifies how Goulas is going to be paid the identical debt B&B owes to Goulas under his employment contract. That modification provides that Goulas will be paid via installments, similarly to how Goulas was paid his commissions under his employment contract.

Under the terms of the post-resignation agreement cited above, B&B still owes Goulas a "substantial part of the original performance," thus, "there is no novation." La.Civ.Code art. 1881. The post-resignation agreement was "[t]he execution of a new writing . . . for the performance of an existing obligation. . ." *Id.* This constitutes an example of "[m]ere modification of an obligation, made without intention to extinguish it" and "does not effect a novation." *Id.*

Accordingly, we reject B&B's contention that this agreement evidences a good-faith belief that any claims by Goulas under La.R.S. 23:631 and La.R.S. 23:632 were satisfied via novation. B&B, a sophisticated entity, could not have reasonably believed that this agreement was a novation. Nor does this agreement absolve B&B from actually making the payments that it admittedly owes to Goulas.

Moreover, after briefs were submitted and oral arguments were originally conducted, this court ordered all parties to file a supplemental brief on the applicability of La.Civ.Code art. 2030 and *Henderson v. Kentwood Spring Water,*

11

*Inc.*, 583 So.2d 1227 (La.App. 1 Cir. 1991). We did so because neither party initially raised the issue addressed in *Henderson*, i.e., that an employer and employee cannot contract away an employer's duties under La.R.S. 23:631 in order to avoid penalties. This court can notice such an issue under La.Civ.Code art. 2030, which states:

> A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
>
> Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

In *Henderson*, the employer and employee signed an agreement wherein the employee consented to a delay of his final paycheck. The employer used this fact as an equitable defense. In deciding *Henderson*, the Louisiana First Circuit Court of Appeal stated the following:

> While it is true that persons may waive personal rights that the law has established, they cannot by their contracts violate prohibitory law or derogate from law enacted for the protection of the public interest. [La.Civ.Code] art. 7. "Any act in derogation of such laws is an absolute nullity." *Id*. We believe that [La.]R.S. 23:631 is such a prohibitory law. Where a statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void, generally an agreement founded on or for doing such penalized act is void. *Fix-It-Shop v. Roy*, 68 So.2d 332 (La.App. Orleans 1953); *Ronaldson v. Moss Watkins, Inc.*, 13 La.App. 350, 127 So. 467 (La.App. 1st Cir.1930). We further find that the agreement has the direct effect of thwarting the legislative intent behind [La.]R.S. 23:631, which was enacted for the protection of the public interest. See *Elliot v. General Gas Corporation*, 229 La. 128, 85 So.2d 55 (La.1956). Consequently, the agreement is void as a matter of law and may not support an equitable defense under [La.]R.S. 23:631.

*Henderson*, 583 So.2d at 1232-33.

B&B argued that *Henderson* is not applicable to the case before us because the employee in *Henderson* signed the contract while still employed with Kentwood Spring Water, Inc., whereas Goulas and Wilkins entered into agreements with B&B

after their employment ended.  We are not persuaded by this argument.  The timing of an absolutely null contract is irrelevant.  The parties cannot enter into such a contract irrespective of when it was confected.

Finally, B&B argues that Goulas and Wilkins were not in the disadvantageous situation that the employee was in *Henderson* because neither Goulas' or Wilkins' employment depended upon their entering into a novation with B&B.  Again, this argument is without merit.  These novation "contracts" were against public policy because they had "the direct effect of thwarting the legislative intent behind [La.]R.S. 23:631, which was enacted for the protection of the public interest."  *Id*. at 1233.  Here, the novations that the trial court found occurred have the result of B&B shirking its responsibilities under La.R.S. 23:631.

Moreover, as to whether B&B has any leverage over either Wilkins or Goulas, Ricky James Poche, a former employee of B&B who was president of B&B at the time, testified that Goulas asked him about his commissions "a couple of days after" he resigned.  Poche then stated that "after discovering that the CEO and the owner were going to pay [Goulas] his commission in full but they were going to try and pay it out in a six month period," he told Goulas "just to go in there calm, cool[,] and collected and accept the deal."  This conversation between Poche and Goulas indicates that Goulas was concerned about his commissions and that B&B exerted some leverage over him by asking that he accept his commissions over a six-month period rather than all at once as he was entitled under La.R.S. 23:631.

Given the above, we agree with the analysis of our sister court in *Henderson* and find it applicable.  Here, like Kentwood Spring Water, Inc.'s contract with Henderson, B&B's contract with Goulas and agreement with Wilkins affords B&B

13

the right to violate La.R.S. 23:631. As such, these post-resignation agreements are absolutely null and cannot be the basis for the trial court's ruling that novation has transpired. Accordingly, we reverse the trial court's finding that Goulas and Wilkins entered into novation with B&B. Any novation that may have occurred between Goulas and Wilkins and B&B is absolutely null and against public policy.

Thus, not only did the post-resignation agreement, by its clear contents, not amount to novation, it is void, as it violates public policy. As such, it cannot support an assertion of an equitable defense under La.R.S. 23:631. See *Henderson*, 583 So.2d 1227.

Finally, B&B contends that it has an equitable defense in that it stopped paying Goulas under the post-resignation agreement due to a good-faith reliance on advice of counsel. We find no merit in this contention.

The Louisiana First Circuit Court of Appeal has specifically rejected this assertion as an equitable defense in cases involving La.R.S. 23:632. See *Magee v. Engineered Mech. Servs., Inc.*, 415 So.2d 277 (La.App. 1 Cir.), *writ denied*, 420 So.2d 455 (La.1982). Moreover, B&B's contention that it was justified in refusing to pay Goulas the remaining payments under the post-resignation agreement based upon a good-faith reliance on advice of counsel assumes that the agreement is valid. It was not. B&B cannot plead an equitable defense based upon advice of counsel that it received months after it illegally contracted away its statutory duties under La.R.S. 23:631. *Henderson*, 583 So.2d 1227.

Given no equitable defense shown by B&B, we find that Goulas can recover penalty wages under La.R.S. 23:632. Goulas earned $10,000.00 per month. Under

14

the calculations delineated in La.R.S. 23:632, Goulas is entitled to $40,909.09.[2] This amount is clearly less than Goulas' full wages from demand until B&B eventually would pay him, as more than four months at $10,000.00 per month has elapsed since Goulas has made demand on B&B. Accordingly, we render judgment that B&B owes $40,909.09 to Goulas as penalty wages.

*Attorney Fees - Goulas*:

B&B argues in brief that it is exonerated from paying attorney fees due to Goulas to equitable defenses. We have already determined that B&B has exerted no such equitable defenses. Further, the argument raised by B&B misstates the jurisprudence interpreting La.R.S. 23:632. Unlike penalty wages, courts have consistently interpreted the award of attorney fees as mandatory under La.R.S. 23:632 if a "well -founded suit" for wages is filed regardless of equitable defenses. *Carriere*, 364 So.2d at 556. A "well-founded suit" is one wherein an employee recovers unpaid wages. *Jeansonne v. Schmolke*, 09-1467, 09-1468, 10-437 (La.App. 4 Cir. 5/19/10), 40 So.3d 347.

Here, Goulas filed suit, and we award him unpaid wages. Thus, it is incumbent on us to award reasonable attorney fees under La.R.S. 23:632. Additionally, Goulas has requested attorney fees for work done on this appeal. "Generally, when an award for attorney's fees is granted at the trial level, additional attorney's fees are proper for work done on appeal. This is to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5

---

[2] We get this result by first dividing Goulas' $10,000.00 monthly salary by twenty-two, the average number of work days in a month. This results in Goulas' daily wage rate. We then multiply this daily wage rate by ninety per La.R.S. 23:632.

So.3d 170.

After a thorough review of the record, we find that the work done on the trial warrants an award of $10,000.00 to Goulas in attorney fees. Further, we find that he is also entitled to $5,000.00 in attorney fees for work done on this appeal. Accordingly, we render judgment awarding these amounts to Goulas.

**<u>Discussion of the Merits - Wilkins:</u>**

Unlike the situation between Goulas and B&B, the facts surrounding Wilkins' petition are in dispute. Wilkins contends that the wages and benefits he received following his resignation from January of 2009 to March of 2009 were simply in exchange for his continued employment with B&B. However, B&B contends that the wages and benefits that Wilkins received for the three months following his resignation were payment of his commissions per an oral agreement. The trial court found as fact that Wilkins received the wages and benefits not for his employment but for payment of Wilkins' commissions that B&B owed to him. Wilkins has appealed this finding of fact.

The applicable standard of reviewing such determinations is the well-settled manifest error or clearly wrong standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart v. State, through DOTD*, 617 So.2d 880, 883 (La.1993) (citing *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973)).

Here, Poche testified to the following:

Q   All right. Now I would like to direct your attention to Mr. Wilkins' departure from the defendant's employ, all right. First of all, sir, do you recall when Mr. Wilkins left what was then know[n] as B&B's employment?

16

A      It was somewhere around the end of December of 2008.

. . . .

Q      All right. At that time did you have any discussions with him about the commissions that were due him or that had accrued for his working through December of 2008?

A      I don't remember if it was exactly that day or the day after[,] but he came to me with a plan of, in lieu of his commissions owed, for us to keep him on payroll for until the end of March. Which the reasoning behind that was for his health insurance wouldn't kick in on a new company he was going to work for for ninety days, so we would pay him while he was transitioning his customers to Johnny Goulas, which he stayed employed with us, and that would be in lieu of his commissions and it would also help him with the benefits as far as hospitalization, dental, for any type of medical needs that he might have during that period of ninety days.

. . . .

Q      Okay. So if I understand your testimony, [Wilkins] was assigned a vehicle, which was a Tahoe, by B&B, correct?

A      Correct.

Q      Okay. Let me just see. And for December commissions that were - - for the commissions that were due him in December, it's your testimony that he agreed to have the ownership of the Tahoe transferred to him in lieu of the December commissions; is that correct?

A      Correct.

Q      All right. Now what about the other commissions that were due him? . . . Did that December commissions in your mind have anything to do with the extension of him staying on B&B's payroll through March 31, 2009?

A      Actually the way I understood it, the way he explained it to me was, he would take three months salary. . . In lieu of his commissions he would just accept the salary while he was employed with the other . . . company.

Poche's testimony is corroborated by the testimony of another former employee

17

of B&B, Mark Comeaux. He was the chief financial officer when Wilkins resigned from B&B. The following exchanges are contained in Comeaux's testimony:

Q      Did you have any conversations with Ricky Poche concerning the terms of Mr. Wilkins' departure from B&B?

. . . .

A      Yes, I did.

Q      Okay. Now as a result of those conversations, did you come to an impression as to what terms B&B had with Mr. Wilkins in connection with Mr. Wilkins' departure?

A      I did.

Q      And what was that impression?

A      That there were commissions that were payable to him as of 12/31 - - or December 31st of 2008. In lieu of those commissions he asked to be - - to receive his salary going forward from January 1st of 2009 to March 31st of 2009, along with his medical benefits.

. . . .

Q      Now, as a result of your understanding of the terms of Mr. Wilkins' departure from B&B's employment, did you undertake any actions as the head accountant, or the CFO of B&B?

A      Yes, I did.

Q      What did you do?

A      Well, part of the responsibility is at the end of the year or at the end of any month, I had to accrue any liabilities that were due, for example, commissions payable. And because of this agreement and arrangement going forward there was absolutely no need to accrue any commissions that were due to Mr. Wilkins, so I removed those commissions from the commissions payable.

The testimony of Poche and Comeaux provide a reasonable basis for the trial court to find that Wilkins' wages and benefits that he received for three months after his resignation constitute payment of commissions rather than wages for work performed during that timeframe. The standard of review dictates finding no error

18

by the trial court in reaching this conclusion. There are "two permissible views of the evidence[,]" and the trial court's "choice between them cannot be manifestly erroneous or clearly wrong." *Id.* at 883 (citing *Canter*, 283 So.2d 716).

*Commissions as Wages - Wilkins*:

We upheld the trial court's finding of fact that the amount B&B payed to Wilkins from January 2009 to March 2009 were payments for his commissions rather than simply wages for work Wilkins was performing at that time. Given the nullity of the oral agreement between B&B and Wilkins, B&B's contention that these payments fully satisfied what it owed to Wilkins is incorrect. However, B&B is entitled to a set-off equal to what it paid to Wilkins from January of 2009 to March of 2009. Thus, we render judgment awarding Wilkins, as wages, his outstanding commissions minus the amount B&B paid to him from January of 2009 to March of 2009.

*Penalty Wages - Wilkins*:

As was the case with Goulas, in order to be awarded penalty wages under La.R.S. 23:632, Wilkins must "show that (1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Hebert*, 706 So.2d at 1013.

Wilkins has also met these three criteria. We found that Wilkins is due wages or commissions from B&B equal to his outstanding commissions minus the amount B&B paid to him from January of 2009 to March of 2009. He has made proper demand of those wages or commissions from B&B, and B&B has failed to remitted these wages or commissions. Like with Goulas above, we must look to whether B&B has an equitable defense based on the facts of Wilkins' case, and if greater justice will

19

be served by the refusal to award penalty wages. *Becker*, 204 So.2d 680.

Similar to the Goulas situation, B&B asserts the equitable defense of novation as evidence of a good-faith belief that any claims by Wilkins under La.R.S. 23:631 and La.R.S. 23:632 were satisfied. We find that the situations differ.

In Goulas' situation, we found that B&B's contention of a reasonable belief that the contract was a novation was untenable. With Wilkins, according to the well-supported factual findings of the trial court, both B&B and Wilkins actually believed that they had entered into a novation for Wilkins' outstanding commissions.

Heeding this finding of fact, it follows that B&B was, in truth and in fact, acting in good faith and, unlike the situation in Goulas, fully complied with the admittedly invalid agreement. Thus, Wilkins has actually received benefits from that agreement, as he was continued on B&B's health insurance policy and was paid a salary from January of 2009 to March of 2009. Wilkins will, under the judgment we render in this opinion, receive all of his outstanding commissions as wages and attorney fees for work done on the trial and appellate levels. We are also asked to award penalty wages, and we must concede that, under the general rule, a contract that is against public policy will not support an equitable defense so as to defeat an award of penalty wages. See *Henderson*, 583 So.2d 1227. However, the singular set of facts in Wilkins' case convinces this court that an award of penalty wages is unwarranted. The general purpose of penalty wages is to deter conduct. B&B's erroneous conduct with respect to Wilkins, given the well-supported findings of fact made by the trial court, was merely to mistakenly believe that it could enter into the agreement. Thereafter, B&B held up its end of the bargain. Thus, we find that greater justice will be served by the refusal to award penalty wages. *Becker,* 204

So.2d 680.  Accordingly, we deny Wilkins penalty wages.

*Attorney Fees - Wilkins*:

B&B argues in brief that it is exonerated from paying Wilkins attorney fees due to its equitable defenses.  We have already dispensed with this argument when addressing attorney fees for Goulas.  It misstates the jurisprudence interpreting La.R.S. 23:632 where courts have found the award of attorney fees to be mandatory under La.R.S. 23:632 if a "well-founded suit" for wages is filed regardless of equitable defenses. *Carriere*, 364 So.2d at 556.

Here, Wilkins filed suit, and we award him unpaid wages.  Thus, we must award reasonable attorney fees under La.R.S. 23:632.  Our review of the record renders a finding that the work done on the trial level warrants an award of $10,000.00 to Wilkins in attorney fees.  Further, we find that he is also entitled to $5,000.00 in attorney fees for work done on this appeal.  Accordingly, we render judgment awarding these amounts to Wilkins.

**CONCLUSION:**

John Goulas and Vernon Wilkins raise five assignments of error.  We find that the trial court erred as a matter of law in granting B&B's exception of unauthorized use of a summary proceeding.  Further, based on La.Civ.Code art. 2030 and *Henderson*, 583 So.2d 1227, we find that the trial court erred as a matter of law that novation occurred between either John Goulas or Vernon Wilkins and B&B Oilfield Services, Inc.  Such contracts or agreements that allow B&B Oilfield Services, Inc. to thwart "the legislative intent behind [La.]R.S. 23:631, which was enacted for the protection of the public interest" are against public policy. *Henderson*, 583 So.2d at 1233.  Accordingly, we reverse the trial court's finding that novation occurred

21

between the parties.

We find the record before us on John Goulas and Vernon Wilkins' petition is complete. We render judgment awarding John Goulas $40,511.16 in unpaid wages from B&B Oilfield Services, Inc. We also render judgment awarding John Goulas $40,909.09 in penalty wages due to B&B Oilfield Services, Inc.'s lack of an equitable defense.

Further, we render judgment that Vernon Wilkins is entitled to his outstanding commissions. However, those commissions are subject to a set-off in the amount that B&B paid to him in wages and benefits from January of 2009 to March of 2009. However, we find that justice dictates that we deny Vernon Wilkins' request for penalty wages. According to the well-supported findings of fact made by the trial court, both B&B and Wilkins thought they had entered into a legal novation of Wilkins' outstanding commissions.

Finally, after reviewing the record, we render judgment awarding each John Goulas and Vernon Wilkins $10,000.00 in attorney fees for work done at the trial level pursuant to La.R.S. 23:632 and each $5,000.00 for work done on this appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

10-934 consolidated with 10-1393

JOHN GOULAS AND VERNON WILKINS

VERSUS

B & B OIL FIELD SERVICES, INC.

consolidated with

JOHN GOULAS, ET AL.

VERSUS

B & B OIL FIELD SERVICES, INC.

**GENOVESE, J., concurs in the result and assigns the following reasons:**

I concur in the result of the majority opinion in this case; however, I disagree with the author of the opinion's reliance on *Henderson v. Kentwood Spring Water, Inc.*, 583 So.2d 1227 (La.App. 1 Cir. 1991). I find the facts in *Henderson* render it inapplicable to the instant matter.

In *Henderson*, the employee was forced to sign a written policy which contained a clause waiving his rights under La.R.S. 23:631 in order to begin or retain employment. I agree with *Henderson* to the extent that an employer and employee cannot contract away an employer's duties under La.R.S. 23:631 and that such a contract is in derogation of law enacted for the protection of the public interest and thereby contra bones mores. However, in the instant matter, neither Goulas nor Wilkins was forced to sign any contract requiring any waiver of any legal rights protected under La.R.S. 23:631. Consequently, the facts in *Henderson* are readily distinguishable from the instant matter, thereby rendering *Henderson* inapplicable.

JOHN GOULAS AND VERNON WILKINS

VERSUS

B & B OIL FIELD SERVICES, INC.

consolidated with

JOHN GOULAS, ET AL.

VERSUS

B & B OIL FIELD SERVICES, INC.

**GREMILLION, J., concurs in part, dissents in part, and assigns the following reasons:**

I dissent from the majority's decision to award statutory penalties to John Goulas. As the majority opinion properly points out, no penalties should be awarded when there is any non-arbitrary, good-faith defense, or reasonable basis for not paying Goulas. Here there are two non-arbitrary, good-faith reasons. First, having dramatically changed the time frame within which Goulas was to expect payment, B&B had a good-faith argument that its obligation had been novated. Certainly the trial court agreed, having expressly found not only that B&B argued for a novation in good-faith, but indeed that a novation existed.

Second, I disagree with the majority opinion that there was no evidence of any non-arbitrary, good-faith allegations of setoff. Neither Jeff Jeurgens' testimony nor B&B's suit against Goulas proves that an offset is actually owed. However, it does, in my view, establish a good-faith argument that Goulas' claims should be relegated to an ordinary breach of contract proceeding which, in all likelihood, would be consolidated with B&B's setoff lawsuit.

I find the appellee's arguments regarding novation and setoff to be cogent, reasonable, fair, and offered in good-faith. Accordingly, I disagree with the majority's decision to impose statutory penalties. In all other respects, I concur with the majority's opinion for the reasons assigned by Judge Genovese.