No. 554

First Circuit

RONALDSON v. MOSS & WATKINS, INC.

(April 14, 1930. Opinion and Decree.)
(May 6, 1930. Rehearing Refused.)

Griffin T. Hawkins, of Lake Charles, attorney for plaintiff, appellant.

McCoy, Moss & King, of Lake Charles, attorneys for defendant, appellee.

LeBLANC, J. In this suit, the plaintiff seeks to recover fees for services rendered to the defendant as a certified public accountant. He presents two claims, the larger for $1,000 under an alleged contract by the terms of which he claims the defendant obligated itself to pay him such fee if it should be determined by arbitration that he had found substantial error in the audit of a firm of certified public accountants who had previously audited its books, and the smaller for the sum of $200, being on a quantum meruit for services performed in making a balance sheet audit of defendant's books for the quarterly period ending December 31, 1926.

The defendant denies liability on both claims on the ground that the plaintiff is a certified public accountant residing in Beaumont, Tex., and not being registered as such in Louisiana as required under the provisions of Act 136 of 1924, he cannot recover for any service rendered here in the practice of his profession. Liability is further denied on the $200 claim for the reason that work for which that amount is claimed was not properly done. The defendant then reconvenes in a larger claim for damages and for the return of money paid to plaintiff for erroneous and worthless audits made by him of its business covering the years 1925 and 1926.

The district judge rendered judgment rejecting plaintiff's claims on the ground that he was not licensed to practice his profession in Louisiana, and therefore could not recover for service performed under an agreement entered into in this state, and also rejecting defendant's reconventional demands holding that "no culpable malpractice" had been established and there was no evidence of damages in any measurable degree.

The plaintiff appealed from the judgment, and the defendant has answered the appeal asking that its demands in reconvention be allowed.

In 1908 the Legislature passed the first law regulating the practice of public accounting in this state. Act 125 of 1908. That law was entirely amended and reenacted by Act 136 of 1924, which placed the practice on a still higher plane of professional dignity and exacted still more rigid qualifications on the part of those desiring to enter it.

Among its various provisions, we find the following under section 5:

"The State Board of Certified Public Accountants of Louisiana, may, in its discretion, register the certificate of any Certified Public Accountant who is the lawful holder of a Certified Public Accountant's certificate issued under the law of another State, and may issue to such Certified Public Accountant a certificate which shall entitle the holder to practice as such Certified Public Accountant and to use the abbreviation 'C. P. A.' in this State, provided that the State issuing the original certificate grants similar privileges to the Certified Public Accountants of this State."

"It shall be unlawful for any holder of a certificate from another State to use the abbreviation 'C. P. A.' with or without any qualifying words or letters, unless he has his certificate registered in the manner herein provided. The fee for such registration shall not exceed Twenty-five ($25.00) dollars."

Section 8 of the act makes it a misdemeanor for any person to represent himself to the public as having received the certificate required, or to assume the practice of public accounting or use the abbreviation "C. P. A.," or any similar words or letters, without first having received the certificate of registration, and prescribes the penalty in case of conviction.

The record in this case, a rather voluminous one, is replete with expert testimony, much of it of a highly technical nature, which, if it served no other purpose, vindicates the judgment and wisdom of the Legislature in having recognized the practice of public accounting as a profession of skill and science and in having placed around it proper safeguards to maintain its dignity.

The Supreme Court of the state, in the case of State vs. De Verges, 153 La. 349, 95 So. 805, 806, 27 A. L. R. 1526, has given it this same recognition, when in passing on the constitutionality of the act of 1908 it uses these words:

"We think, therefore, that the Legislature, in the public interest and for the general welfare, unquestionably had and has the power to regulate the highly skilled and technical profession of public accounting in the measure which it did."

The Legislature had before it a question of public interest, and in adopting this legislation declared what the policy of the state was in regard thereto.

In maintaining its rights to act on the question, the Supreme Court in the De Verges case, cited supra, makes this comment:

"It is true that neither morals, health, nor safety of any one is jeopardized by the practicing of this profession, however incompetent a person may be, but the power of the state in matters of this sort is not confined to professions involving such consequences. It may also act whenever the general welfare requires to protect the public in the skilled trades and professions against ignorance, incompetence, and fraud."

With this law before us we come now to the paramount question presented in this case: Can a contract entered into by a certified public accountant not qualified under the provisions of the act be enforced in a civil action?

In approaching this question it might be stated that the bulk of the testimony has no bearing on it. The salient facts pertinent to that issue do not seem to be seriously disputed. The plaintiff is a resident of the state of Texas, and a registered certified public accountant in his state, and has never procured a certificate as such in this state. The contract he entered into with the defendant is a Louisiana contract, and he performed duties thereunder at Lake Charles in this state. Moreover, it appears that his service under this contract was not the only occasion on which he had practiced his profession in Louisiana. In his brief his counsel attempts to escape the force of the judicial declarations in his petition in which he styles himself as a certified public accountant and the services rendered as that of a certified public accountant, by contending that his actual work was as an accountant or auditor, and therefore he is not amenable to the harsh provisions of the statute. In that we cannot agree with the learned counsel, as his pleadings and the evidence make it plain that he assumed the role of a certified public accountant and in his correspondence and all his reports signed himself as "Certified Public Accountant," or else used the abbreviated form "C. P. A."

Those being the facts, it would seem there was a violation of the statute to the extent that plaintiff has incurred the criminal penalty. Has he, in addition, forfeited his right to recover because of having entered into an unlawful contract?

In considering the object and nature of contracts, the Civil Code prescribes:

"Art. 1891. The object of a contract must be possible, by which is meant physically or morally possible. The possibility must be determined, not by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it."

"Art. 1892. That is considered as morally impossible, which is forbidden by law. or contrary to morals. All contracts having such an object are void."

In the following section, in considering the cause or consideration of contracts, we find article 1893 which provides that:

"An obligation without a cause, or with a false or unlawful cause, can have no effect."

"Art. 1895. The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order."

The provisions of our Civil Code of themselves would seem to greatly affect the rights of the plaintiff under his contract.

The law of this state forbids him as a resident of another state to assume the very position he took and had to take to carry out his agreement with the defendant. Under a strict interpretation of article 1892, therefore, the agreement would be void.

Moreover, it will be recalled that the Supreme Court in the De Verges case, supra, intimated that in enacting the certified public accountant law, whilst not legislating in the interest of public morals, the Legislature was exercising its right to act for the general welfare, in protecting the public against ignorance, incompetence, and fraud. In other words, it was acting in the interest of public order. An agreement in violation of the statute, entered into by the plaintiff, was in contravention of the public order, and therefore, under a strict interpretation of articles 1893 and 1895, its cause was unlawful and it could have no effect.

Aside from these provisions of our Civil Code, the principle of law here involved seems to have been well settled by the jurisprudence of the country.

Of course, where a statute by its terms renders void a contract entered into by one not qualified under its provisions, there can be no ground for discussion. An example of such statute in Louisiana is to be found in Act 236 of 1920, which regulates real estate brokerage. That law not only forbids the practice without having first obtained a license, but it specifically prohibits the collection of fees by those who have not complied with its provisions.

Where the law does not contain the prohibition but imposes a penalty for its violation, it seems to be generally held that the penalty implies the prohibition. The decisions to that effect are based on the well-known principle that "the law will not lend its support to a claim founded upon its violation."

It would seem to be somewhat anomalous to have a court exercising criminal jurisdiction pronounce a man a criminal and inflict the penalty of the law on him, and then turn around and, sitting as a civil court, let that same man reap the benefit of the same act for which it had just punished him.

In 13 Corpus Juris, p. 421, sec. 352, we read:

"Frequently a statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void. In cases of this kind the decisions of the Court are not in harmony. The generally announced rule is that an agreement founded on or for the doing of such penalized act is void. In accordance with the view of Lord Holt in an old case: Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute, is a void contract, tho' the statute itself does not mention that it shall be so, but only inflict a penalty on the offender, because a penalty implies a prohibition, tho' there are no prohibitory words in the statute. * * *"

In Ruling Case Law we find that even the imposition of a penalty is not essential in order that there may be an implied prohibition.

"In other words, it is not necessary that a statute should impose a penalty for doing or omitting to do something in order to make void a contract which is opposed to its operation. The obverse of this proposition is however, the basis of a well established rule, which dates at least from the time of Lord Holt. * * * Although it might perhaps not warrant the conclusion that a penalty implies a prohibition for the purpose of making the offense punishable by indictment in case the law had prescribed another and a specific punishment for the offense, Lord Holt's remark is authority for the proposition that a contract made in direct violation of a statute providing a penalty for the violation thereof is illegal though the contract is not in express terms prohibited or pronounced void." Ruling Case Law, vol. 6, p. 702, sec. 108.

Cases in large numbers are cited under these authorities, older ones from · which the rule announced was formulated and the more recent ones in support of the rule.

The only departure from the rule is to be found in those cases where the court was considering a statute in which the penalty was imposed as revenue bearing measure. But such was not the purpose and intention of the Legislature in enacting the law regulating the practice of public accounting, as has already been noted. The fee of $25 exacted from the applicant for registration is not a license in the sense that it is meant as a revenue producer, but merely a payment he makes for the certificate he receives after having been found competent by an official board of the state, which holds him out to the business world as worthy of its trust and confidence in the practice of his chosen profession. About all the fee can be used for is to help defray the expense of this board in its work incidental to the granting of his certificate.

With regard to this particular kind of statute, Corpus Juris, volume 13, p. 423, sec. 353, has this to say:

"Where a license or certificate is required by statute as a requisite for one practicing a particular profession, an agreement of a professional character without such license or certificate is ordinarily held illegal and void. This is true, for example, of an agreement made by an unlicensed or uncertified physician, an attorney at law, a conveyancer, an engineer, or a school teacher. The authorities are in accord on this point, where the license is required for public protection and to prevent improper persons from acting in a particular capacity and not for revenue purposes only. * * *"

Whilst there are no Louisiana cases we have been able to find or to which we have been referred bearing on this particular point, the principle seems to be so well imbedded in the jurisprudence of the country, and it seems so reasonable and just, that we can very well subscribe to it.

The learned district judge was therefore correct in holding that the contract under which plaintiff sued was unlawful and void and could not be enforced.

Defendant's first claim in reconvention is for the recovery of the money it paid plaintiff for erroneous and worthless audits. The gist of its complaint is that the plaintiff did not make a detailed audit, but only what is known as a "balance sheet audit" of its business. A very great part of the testimony is devoted to an explanation of what is meant by a "balance sheet audit" and how it differs from a detailed or complete audit. From the mass of expert testimony and the authorities cited we think it is safe to say this much about it: That in making a "balance sheet audit" all the accountant is expected to do is to strike a general balance of the assets and liabilities of the business as reflected from the inventories, the books, bank and other accounts kept by the regular officers and employees of that business all of which he assumes to be correct. It differs from the detailed audit in this: That the latter requires him to make his own independent investigation into the physical property and assets as well as all papers, books, accounts, etc., of the business. In making a detailed audit, the auditor takes nothing for granted. It is needless to say that such audit involves much more research and entails far greater labor on the part of the auditor. It is but reasonable also that it should be much more expensive. Our appreciation of the testimony is that only a balance sheet audit was contemplated by the parties in this case, and that the errors which appeared came from the fact that the auditor accepted as true and correct the inventories furnished by the defendant which in reality were not so. The demand was properly rejected.

As to the reconventional demand for damages to its business, we agree with the trial judge in his statement that "there is no evidence of their infliction to any measurable extent."

The judgment appealed from is affirmed.