96 So.2d 473

**NATIONAL DEPARTMENT STORES CORPORATION**

v.

**HOUSE OF FASHION, Inc.**

No. 43115.

Jan. 21, 1957.

On Rehearing June 10, 1957.

---

Dwight, Royall, Harris, Koegel & Caskey, New York City, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for plaintiff-appellant.

Breazeale, Sachse & Wilson, Baton Rouge, for defendant-appellee.

PONDER, Justice.

After listening to the arguments advanced herein, a study of the briefs in support of the appeal, and a review of the record in the case, we have arrived at the conclusion that the trial judge in his written opinion has correctly stated the facts and applied the law applicable to the case, and therefore, we have decided to adopt the opinion of the trial judge as the opinion of this Court, which is as follows:

"This is a suit on a promissory note in the amount of $116,854, made and executed by defendant, dated August 17, 1955, payable to plaintiff, or order, on January 31, 1956, with interest. To plaintiff's suit defendant has filed an exception of prematurity. At the hearing on the exception evidence was offered by agreement of counsel for both parties.

"On August 17, 1955, The Rosenfield Dry Goods Company, Limited, plaintiff's wholly owned subsidiary, sold to defendant its assets, this sale being evidenced by a written contract, a photostatic copy of which has been offered in evidence and identified as 'Exceptor 4'. The note here sued on was given in part payment of the purchase price of the assets in question (See 4–c of the contract of sale), and represented the balance of the purchase price after a cash payment (4–a), and the assumption by defendant of certain liabilities of Rosenfield (4–b), and was the exact amount of Rosenfield's liability to plaintiff.

"In paragraph 1 of the contract it is provided:

" 'Annexed hereto, marked Exhibit A, is a balance sheet showing the assets and liabilities of Rosenfield as at July 31, 1955. Rosenfield represents and warrants * * * that its balance sheet, annexed hereto as Exhibit A, is substantially correct * * *.

"The balance sheet so referred to is designated as 'Unaudited Estimate balance sheet as at July 31, 1955.' This balance sheet formed the basis for the sale, the parties thereby determining the assets purchased and the liabilities assumed by defendant, all subject to the provisions of paragraph 9 of the contract, which reads:

" '9. Fashion may, at its option and at its own expense, cause a firm of certified public accountants of its own selection (hereinafter called the "Auditors"), to make, on or before January 1, 1956, a complete balance sheet audit of Rosenfield as at July 31, 1955, for the purpose of verifying whether or not the assets sold and purchased hereunder and the liabilities assumed by Fashion hereunder are correctly stated in Rosenfield's balance sheet annexed hereto as Exhibit A. If the Auditors find that the annexed balance sheet does not correctly state the amount of any such assets or liabilities, the Auditors shall promptly inform Rosenfield's accountants, Price, Water-

house & Company, of any claimed discrepancies therein. To the extent that Price, Waterhouse & Company agrees that said balance sheet annexed hereto as Exhibit A, does not correctly state the amount of any such assets or liabilities, the parties agree that the purchase price hereunder shall be adjusted accordingly. In the event that Price, Waterhouse & Company does not agree with any of the claimed discrepancies reported to it by the Auditors, the same shall be referred to such independent firm of certified public accountants as the Auditors and Price, Waterhouse & Company may select by mutual agreement. The determination of said independent firm as to all claimed discrepancies referred to it shall be final and binding upon both parties hereto and to the extent that said independent firm finds that the balance sheet annexed hereto as Exhibit A does not correctly state the amount of any such assets or liabilities (with respect only to matters referred to said firm), the purchase price hereunder shall be further adjusted accordingly. In no event shall the total of all such adjustments result in any increase in the total purchase price over that specified in Paragraph 2 hereof. The Auditors and any such independent firm shall be furnished with a copy of this Agreement. The expense of retaining said independent

firm shall be divided equally between the parties hereto. The amount of any price adjustment resulting from the foregoing shall be due and payable on · January 31, 1956, and Rosenfield hereby consents that any amounts owing to Fashion arising from such adjustment may be deducted by Fashion from the amount due and owing by it to National Department Stores Corporation on said day, and agrees to hold Fashion harmless against any claims by said National Department Stores Corporation for failure to pay the same to the extent of such price adjustment.'

"Simultaneously with the execution of the contract of sale and the note here sued on, plaintiff delivered to defendant a letter, a photostatic copy of which is filed in evidence as 'Exceptor 5', and second and third paragraphs of which provide:

" '2. We hereby agree to indemnify you and any person, firm or corporation to which any portion of the Rosenfield assets is conveyed at your request and which is associated with you in the operation of the business heretofore conducted by Rosenfield against any loss resulting from any failure by Rosenfield to fully perform all its agreements and covenants set forth in its said agreement with you dated this day, or from any misrepresentation or breach of warranty contained in its said agreement or from any liability,

contingent or otherwise, known or unknown, not shown in the balance sheet of Rosenfield annexed to its said agreement, or from any liability incurred by Rosenfield after July 31, 1955 and prior to the date hereof not in the ordinary course of business.

" '3. Any adjustment of the purchase price of the assets purchased by you from Rosenfield Dry Goods Company, Limited, in accordance with said agreement may be deducted by you from the amount due and owing to us on January 31, 1956, pursuant to the terms of your promissory note payable to us on that date.

"The evidence shows that defendant retained L. A. Champagne and Company, Certified Public Accountants, to make an audit of Rosenfield's balance sheet as at July 31, 1955, as provided by paragraph 9 of the contract of sale; that Champagne made such audit and furnished a copy thereof to Price, Waterhouse and Company on December 29, 1955; that said audit showed total claimed discrepancies in the amount of $49,422.82; and that neither Price, Waterhouse and Company nor plaintiff has taken any action in connection therewith.

"The undisputed portion of the note here sued on has been paid by defendant and accepted by plaintiff without prejudice to the rights of either party, leaving in dispute only the sum of $49,422.82, the amount of the total claimed discrepancies as shown by Champagne's audit, with interest. It is defendant's contention that plaintiff's suit as to this amount is premature until there has been a compliance on the part of plaintiff and its auditors with the provisions of paragraph 9 of the contract of sale.

"Plaintiff first contends in effect that the claimed discrepancies cannot be allowed for the reason that the contract of sale shows on its face that certain assets were sold at less than their book value and that the obvious purpose of this reduction was to take care of just such discrepancies as defendant's auditor has reported. Particular reference is made to the reduction of $50,000 on the item of accounts and notes receivable, which plaintiff says was to take care of bad debts, and the reduction of $80,000 on the item of merchandise inventories, which plaintiff says was to take care of obsolete and depreciated merchandise. Plaintiff is doubtless correct on both points. However, it must be remembered that in each instance the reduction was made on a figure reflected by Rosenfield's balance sheet, which it warranted to be substantially correct, and which was subject to audit under the provisions of paragraph 9 of the contract. The same situation prevails with reference to other similar points raised in plaintiff's argument. In my opinion the fact that the contract shows certain reductions or discounts were given does not in any manner affect the provisions of paragraph 9 thereof.

"Plaintiff next contends that Champagne's audit is a detailed audit instead of a balance sheet audit as contemplated by the contract, hence no obligation exists on its part or on the part of its auditors in connection therewith. Plaintiff cites the case of Ronaldson v. Moss Watkins, Inc. [13 La.App. 350], 127 So. 467 [470], Court of Appeal, First Circuit, wherein the court distinguished a balance sheet audit from a detailed audit, saying:

" 'That in making a "balance sheet audit" all the accountant is expected to do is to strike a general balance of the assets and liabilities of the business as reflected from the inventories, the books, bank and other accounts kept by the regular officers and employees of that business, all of which he assumes to be correct. It differs from the detailed audit in this: That the latter requires him to make his own independent investigation into the physical property and assets as well as all papers, books, accounts, etc., of the business. In making a detailed audit, the auditor takes nothing for granted.'

"The Ronaldson case is the only case cited on this point in such widely recognized works as Words and Phrases and Corpus Juris Secundum. In American Jurisprudence, another widely recognized work, the question does not appear to be discussed.

"The audit referred to in paragraph 9 of the contract is designated as 'a complete balance sheet audit'. It is authorized to be made 'for the purpose of verifying whether or not the assets sold and purchased hereunder are correctly stated in Rosenfield's balance sheet'.

"Obviously this is not a mere 'balance sheet audit' as defined in the Ronaldson case, but is a 'detailed audit' as there defined, as evidenced by the stated purpose of the audit.

"The parties to the contract here involved undoubtedly realized the importance of providing the machinery whereby it might be determined 'whether or not the assets sold and purchased (under the contract) and the liabilities assumed by Fashion (under the contract) are correctly stated in Rosenfield's balance sheet'. Until this machinery his functioned as provided by the contract, it is my opinion that this action is premature.

"For these reasons the exception of prematurity filed by defendant herein is maintained, and plaintiff's suit is dismissed."

For the reasons assigned, the judgment of the lower court is affirmed at appellant's cost.

### On Rehearing

HAMITER, Justice.

The facts of this cause, as well as the events leading up to the filing of the suit, are fully and accurately set forth in the opinion originally handed down by this

court. That opinion discloses also that the questions presented by defendant's plea of prematurity, which was sustained by the district court, are: (1) what type of audit did the parties to the instant contract contemplate when, by the language of paragraph 9, they provided for a "complete balance sheet audit" and (2) did the audit as made by L. A. Champagne and Company for the defendant constitute the audit intended by such language?

After further considering the provisions of the written contract we cannot say with any degree of certainty just what type of audit was contemplated when reference was made to a "complete balance sheet audit * * * for the purpose of verifying whether or not the assets sold and purchased hereunder and the liabilities assumed by Fashion hereunder are correctly stated in Rosenfield's balance sheet * * *." Nor do we find any other clause in the agreement which might explain the ambiguity. Consequently, it is proper and necessary to examine extrinsic evidence in order to determine the true intention of the parties. Gulf Refining Company v. Garrett, 209 La. 674, 25 So.2d 329 (and the cases cited therein) and Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367.

Incidentally, in Ronaldson v. Moss Watkins, Inc., 13 La.App. 350, 127 So. 467, 470 (discussed in the original opinion herein) a distinction was drawn, *based wholly upon testimony given by experts in the field of accounting,* between a mere "balance sheet

audit" and a "detailed or complete audit". Also the court, after recognizing such a difference, concluded *from the testimony adduced* that by the terms of the contract the interested parties contemplated only a balance sheet audit.

In the instant case, however, there was no testimony adduced on the hearing of the sustained plea of prematurity from which we might resolve the ambiguity of the contract under consideration; nor was there any evidence disclosing the method by which L. A. Champagne and Company made its audit for the defendant. This being true we are not now in a position to determine whether the discrepancies designated in such prepared audit were intended to be the subject of arbitration under the terms of the contract.

Under these circumstances we find it necessary to refer the plea of prematurity to the merits and to remand the cause for trial, it to include the introduction of evidence for the purpose of showing the type of audit contemplated by paragraph 9 of the contract and whether the audit made by L. A. Champagne and Company was in keeping with the intendment of the parties. If after trial the district court concludes that such prepared audit was of the type contemplated then the plea of prematurity can and must be sustained and the parties required to arbitrate in accordance with their contractural obligations. If that conclusion is not reached the court shall render such judgment on the merits as the law and the evidence warrant.

For the reasons assigned the judgment appealed from is annulled and set aside, the plea of prematurity is referred to the merits, and the case is remanded for further proceedings according to law and consistent with the views herein expressed. Appellee shall pay the costs of this appeal, and all other costs shall await the final determination of the litigation.

PONDER, J., dissents.