# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 19-700


**PREIS, PLC**

**VERSUS**

**JANE "MEGAN" DAILY**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20190618
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie, Judges.


**AFFIRMED.**

**Alan K. Breaud**
**Timothy Wayne Basden**
**Breaud & Meyers**
**P. O. Drawer 3448**
**Lafayette, LA 70502**
**(337) 266-2200**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Preis, PLC**

**Dale E. Williams**
**Law Office of Dale E. Williams**
**212 Park Place Drive**
**Covington, LA 70433**
**(985) 898-6368**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Jane "Megan" Daily**

**SAVOIE, Judge.**

In this employment dispute between a law firm and former employee, the law firm appeals the trial court's award of past wages, penalty wages, and attorney fees to the former employee, as well as the trial court's denial of its claim for stipulated damages under the employment contract. For the following reasons we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2017, while Jane "Megan" Daily (Daily) was a senior law school student, she was offered a full-time associate attorney position with Preis PLC (Preis). Employment was to begin no later than September 1, 2017, and it was contingent upon her passage of the Louisiana bar examination. Daily was presented with a "Letter Agreement For Employment with Preis PLC" (employment contract) on January 12, 2017, and she signed the contract on January 17, 2017. It provided for a starting annual salary and certain benefits, and further provided as follows:

> 4. <u>REQUIRED EFFORT</u> – Approximately 2,000 billable hours annual, with a 90% realization.
>
> . . . .
>
> 7. <u>LACK OF REQUIRED EFFORT</u> – In the event there is not substantial compliance with the contractually agreed to effort requirement (hours), upon ten days notice, there shall be a corresponding proportionate reduction in salary (and bonus, if applicable).
>
> . . . .
>
> 16. <u>YOUR COMMITMENT</u> – In consideration of the resources that have and will be expended by the Firm in your training and the fringe benefits provided, you agree to a term of employment of Three (3) years, commencing on the date you report to work to begin permanent full time employment. Should you fail to report to work to begin permanent full time employment on or before September 1, 2017 or should you terminate your employment with Preis PLC prior to the completion of the Three (3) year term, other than for health reasons of yourself, your spouse, and/or your children, the Firm will be entitled to liquidated damages of TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS.
>
> 17. <u>FIRM'S COMMITMENT</u> – The Firm makes a corresponding commitment, assuming satisfactory performance, to employ you for a term of Three (3) years. In the event that your performance is unsatisfactory,

the Firm shall have the right to terminate this contract of employment upon providing Thirty (30) days written notice to you.

. . . .

19. CONFIDENTIALITY – You agree to keep the terms of this offer, the conditions of employment, and your compensation confidential and will not disclose them to anyone outside of your immediate Family without the written permission of Edwin Preis, Robert Kallam, or Frank Piccolo.

Thereafter, Daily successfully completed the bar examination and began full-time employment at Preis as an associate attorney on or around September 1, 2017. She thereafter received a raise in salary after her first year of employment. However, she later resigned from the firm in November 2018. According to Daily, she had indirectly heard from other attorneys in the firm that her supervising attorney, Catherine Landry (Landry) was frustrated with her performance, and she felt she could be fired from the firm. Therefore, Daily sought employment elsewhere and resigned from Preis after securing a position at a different law firm.

On January 17, 2019, Daily, through counsel, sent a certified letter to Preis demanding payment of past-due wages in the amount of $2,591.95, which she asserts were owed for the pay period ending November 30, 2018. Therein, Daily indicated that this amount was calculated based upon wages owed through that date, less deductions for taxes, as well as an additional deduction of $1,875.00, which is the amount she owed on a promissory note in favor of Preis for a loan for bar examination expenses. In addition, she sought payment of penalty wages and attorney fees contemplated by La.R.S. 23:632. To date, no payment has been made to Daily.

On January 29, 2019, Preis filed a Petition for Breach of Contract and Damages against Daily seeking $10,000.00 in stipulated damages contemplated by the employment contract as a result of Daily's resignation prior to three years of employment. Preis's Petition ultimately sought an award of $7,408.05, explaining:

> The last payroll payment owed . . . was the November 18, 2018 payroll. After deducting payroll deductions, taxes, and the outstanding loan amount of $1,875.00 and stipulated liquidated damages due to Ms.

2

Daily's breach of the three-year employment contract, Ms. Daily has an outstanding debt to Preis LLC of $7,408.05. Preis PLC seeks Judgment in this amount against Ms. Daily.

The Petition further sought a "Declaratory Judgment that the amounts owed herein may be offset against any amounts owed by Preis PLC to Ms. Daily[.]"

On April 23, 2019, Daily filed an Answer, Affirmative Defenses and Reconventional Demand. Therein, she alleged that at the time of her resignation, she was owed gross wages in the amount of $6,575.00, and she sought a judgment against Preis in that amount, in addition to penalty wages as contemplated by La.R.S. 23:632, as well as attorney fees and costs.

A bench trial was held June 11, 2019. At trial, Daily was called to testify, as well as Edwin Preis, Jr. (Mr. Preis), who was the managing partner of the firm, Landry, who was Daily's supervising attorney, and Christine Daigle (Daigle), who was Preis's director of finance. In addition, the following evidence was admitted into the record: the employment contract; the promissory note in favor of Preis; a document reflecting a calculation of Daily's final paycheck, which, after taxes and other deductions, but not including the $10,000.00 Preis seeks in damages, shows a total of $2,591.95 owed in wages;[1] Daily's January 17, 2019 demand letter for past wages; and Daily's "income profitability report" prepared by Daigle.

Thereafter, the trial court took the matter under advisement. On June 17, 2019, it issued a written Ruling. Therein, the trial judge noted that "considering that Daily's collections covered the expenses demonstrated to be directly attributable to her employment plus an additional sum of $84,394.74, [Daigle's] profitability analysis fails to approximate an actual loss to Preis." It went on to conclude that the $10,000.00 stipulated damages provision in the employment contract was not enforceable because

---

[1] It shows a gross income of $6,575.00, plus mileage income of $41.26, as well as pretax deductions in the amount of $670.00 for health insurance, a health savings account, and a 401(K), a $1,479.31 deduction for payroll tax, and a $1,875.00 deduction for the balance of the promissory note, which was undisputed.

3

it did not reasonably approximate Preis's loss in the event of a breach, as required by *Keiser v. Catholic Diocese of Shreveport, Inc.*, 38,797 (La.App. 2 Cir. 8/18/04), 880 So.2d 230. Therefore, the stipulated damages provision was equivalent to a forfeiture of wages prohibited by La.R.S. 23:634 and unenforceable as violation of public policy. *Id.*

The Ruling also concluded that Preis owed Daily wages in the amount of $2,591.95, "[a]fter deduction of taxes and health savings and 401K deductions as authorized by Daily" and "the sum of $1875.00 which was for repayment of a promissory noted owed by Daily to Preis and which she does not dispute." However, the trial court set an additional hearing on the issues of penalty wages and attorney fees.

On June 22, 2019, Preis filed a Request for Reconsideration. On July 8, 2019, Daily filed an opposition to Preis's Request for Reconsideration, and on July 9, 2019, she filed an Application for Attorney Fees, with an attached invoice reflecting attorney fees incurred. In lieu of a hearing, the parties agreed to submit the issues of penalty wages and attorney fees, as well as Preis's Request for Reconsideration on briefs.

On July 17, 2019, the trial court issued a Ruling on Request for Reconsideration and Determination of Penalties and Attorney Fees. Therein, it denied Preis's Request for Reconsideration. It further noted Daily's daily rate of pay for purposes of a penalty wage calculation under La.R.S. 23:632 was $295.45 and awarded her penalty wages in the amount of ninety days of pay ($26,590.90) as provided by the statute. Also on July 17, 2019, the trial court signed a Judgment awarding Daily $2,591.95 for past wages, $26,590.50 for penalty wages, and $15,036.50 for attorney fees, plus expenses and interest.

Preis filed a suspensive appeal seeking a reversal of the trial court's ruling and a judgment awarding it $7,408.05 in damages owed under the employment contract. Therein, it asserts the following as assignments of error:

4

1. The trial court erred when it refused to enforce the stipulated damages clause in Jane "Megan" Daily's three year term employment contract.

2. The trial court erred when it failed to render Judgment in favor of Preis PLC and against Jane "Megan" Daily in the amount of $7,408.05, representing the amount owed to Preis PLC by Jane "Megan" Daily after compensation.

3. The trial court erred in its award to Jane "Megan" Daily and against Preis PLC of $2,591.95 in unpaid wages.

4. The trial court erred in its award to Jane "Megan" Daily and against Preis PLC of penalty wages under La. R.S. 23:632(A).

5. The trial court erred in its award to Jane "Megan" Daily and against Preis PLC of attorney fees under La. R.S. 23:632

In response, Daily filed an answer to Preis's appeal and seeks additional attorney fees incurred in connection with the appeal.[2]

## ANALYSIS

*Preis's Claim for Stipulated Contractual Damages:*

This case involves two competing claims: (1) Preis's claim against Daily for contractual damages as a result of her early resignation from the firm, and (2) Daily's claim under La.R.S. 23:631-23:653 for past wages owed as a result of her employment with Preis, penalty wages, and attorney fees. We will address Preis's claim first.

On appeal, Preis seeks review of the trial court's ruling that the $10,000.00 stipulated damages provision in its employment contract with Daily was unenforceable and resulting conclusion that Daily does not owe damages as a result of her early resignation from the firm.

We review the trial court's ruling keeping in mind the following:

> Generally, a contract is examined on its four corners, without the need for extrinsic evidence, as a matter of law. However, "[w]here factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown." *Evangeline Parish Sch. [Bd.] v. Energy Contr.*, 617 So.2d 1259, 1265 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1228 (La.1993) (quoting *Borden,*

---

[2] Daily's Answer to the appeal also sought review of the trial court's award of net wages, instead of gross wages; however, she failed to brief that issue. We therefore consider that issue waived. Uniform Rules–Courts of Appeal, Rule 2-12.4; *Duhon v. Albertson's Inc.*, 02-494 (La.App. 3 Cir. 10/30/02), 829 So.2d 1190.

5

*Inc. v. Gulf States Utilities Co.*, 543 So.2d 924, 928 (La.App. 1 Cir.), *writ denied*, 545 So.2d 1041 (La.1989)). Conversely, "[w]hen a trial court's interpretation of a contract is not based upon any factual findings, but, rather, is based upon a review of the contract's language, the manifest error standard of review does not apply." *Derouen v. Nelson*, 09-467, p. 3 (La.App. 3 Cir. 3/10/10), 32 So.3d 1079, 1082 (citing *Conoco, Inc. v. Tenneco, Inc. By and Through Tennessee Gas Pipeline Co.,* 524 So.2d 1305 (La.App. 3 Cir. 1988), *writ denied*, 525 So.2d 1048 (La.1988)).

*Davis v. St. Romain*, 16-811 (La.App. 3 Cir. 6/7/17), pp. 4-5, 222 So.3d 793, 797 (alterations in original).

As the party seeking to enforce the stipulated damages provision, Preis bears the burden of proving that it is entitled to have the employment contract enforced against Daily. *See Service Investors Ltd. v. Scully,* 08-1062 (La.App. 3 Cir. 3/4/09), 9 So.3d 910. It therefore bears the burden of proving the essential elements of a valid contract, which includes a lawful cause – that is, one that is not unlawful or prohibited by public policy. *Id.*

"The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms **not prohibited by law or public policy**." *Newsom v. Global Data Systems, Inc.*, 12-412, 12-413, p. 4 (La.App. 3 Cir. 12/12/12), 107 So.3d 781, 785, *writ denied*, 13-429 (La. 4/5/13), 110 So.3d 595 (emphasis added). Similarly, "[s]tipulated damages may not be modified by the court **unless they are so manifestly unreasonable as to be contrary to public policy**. La.Civ.Code art. 2012 (emphasis added).

However, La.R.S. 23:634(A) expressly prohibits employers from including terms in their employment contracts that require employees to forfeit their wages in the event of their resignation; therefore, any such provision in an employment contract would necessarily be unlawful and against public policy. Specifically, La.R.S. 23:634(A) states:

> No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed;

6

but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation

Similarly, La.R.S. 23:635 generally prohibits employers from "assess[ing] any fines against his employees or deduct[ing] any sum as fines from their wages[,]" with some exceptions such as when an employee damages the employer's property or is guilty of theft.

As we recognized in *Service Investors Ltd.,* 9 So.3d at 915 (emphasis added):

> [S]tatutes such as La.R.S. 23:634-36 indicate a strong desire by our legislature to "take a good look" at employment contracts. Further evidence of this public policy to protect our state's employees while contracting with employers can be found in La.R.S. 23:921, regarding nullity of noncompetition, choice of forum, or choice of law provisions unless specific criteria are met that protect the employee.
>
> . . . .
>
> Due to the clear public policy of our state to protect its employees when they enter into a contract for work with an employer, . . . **stipulated damage provisions must be scrutinized more closely than in typical contracts.**

Provisions in employment contracts that do not expressly state that an employee must forfeit wages upon resignation prior to the term of the contract, but rather require the employee to pay stipulated damages upon resignation, have consistently been held to be de facto forfeiture of wages clauses in violation of La.R.S. 23:634(A), and therefore unenforceable, when the stipulated damages clause does not "reasonably approximate the obligee's loss in the event of a breach." *Keiser,* 880 So.2d at 236. "To determine the reasonableness, the court should inquire as to **whether the parties attempted to approximate the actual damages in confecting the agreement**." *Id.* (emphasis added). In so holding, the *Keiser* court cited to *American Leasing Co. of Monroe Inc. v. Lannon E. Miller & Son, General Contracting,* 469 So.2d 325, 329 (La.App. 2 Cir. 1985), which states: "When a stipulated damages provision is enforced, the court must determine the reasonableness of the amount by inquiring whether the parties, by the clause, truly attempted to reasonably approximate actual damages."

*Keiser,* 880 So.2d 230*,* involved a teacher's one-year employment contract that provided for $2,500.00 in stipulated damages in the event the teacher resigned prior to the one-year term. Therein, the court concluded that this provision was "unenforceable as a *de facto* forfeiture of wages clause[,]" noting

> Both [the teacher's] and [the employer's] testimony reflect[] that the stipulated damage clause does not reflect an attempt by the parties to approximate the actual damages which might be suffered by the school in the event [the teacher] left her employment early. To the contrary, the evidence establishes that the clause was part of the school's standard teacher contract. Furthermore, when [the teacher] expressed concern about the clause, she was informed that the clause had never been enforced against any other employees.
>
> In addition to the admission that the clause does not reflect an attempt to approximate the actual damages, the record is devoid of any evidence regarding actual damages suffered. While [the school's principal] testified that she had to hire a substitute for five weeks until [the teacher's] aide was hired as the permanent replacement, there was no indication that the substitute made more or even the equivalent of what the school would have paid [the teacher] during the same time period.

*Id.* at 236.

Similarly, in *Service Investors Ltd.*, 9 So.3d 910*,* this court considered a five-year employment contract containing a stipulated damages provision that required an employee to pay the employer one-year's salary in the event the employee resigned prior to the five-year term. In affirming the trial court's conclusion that the provision violated La.R.S. 23:634, we cited *Keiser,* 880 So.2d 230, and noted that there was no effort by the parties to estimate actual damages in the event of the employee's breach, and the provision was penal in nature and "unequivocally unreasonable." *Service Investors Ltd.*, 9 So.3d at 915. We therefore concluded that the stipulated damages provision was unenforceable, as it was "both unlawful and against public policy." *Id.* *See also, Goulas v. B&B Oilfield Services, Inc.*, 10-934, 10-1393, p. 8 (La.App. 3 Cir. 8/10/11), 69 So.3d 750, 758, *writ denied,* 11-1951 (La. 11/14/11), 75 So.3d 945, and *Louisiana Television Broadcasting, LLC v. Price*, 18-553 (La.App. 1 Cir. 8/14/18)

(unpublished opinion), wherein similar stipulated damages provisions were held as being against public policy and unenforceable.

In addition, in *Newsom,* 107 So.3d at 789, we held that an employment contract provision requiring an at-will employee to reimburse its former employer for education and training expenses was void, as it was against public policy and an improper attempt by the employer to "skirt its statutory obligations to its former employees."

On appeal, Preis does not point to any case law wherein a stipulated damages provision in an employment contract was found to be enforceable against an employee. Rather, it attempts to distinguish the cases holding that a stipulated damages provision in an employment contract was unenforceable, arguing that the stipulated damages provision at issue here was reasonable under the circumstances, not penal in nature, and related to actual damages Preis sustained.

Again, "[t]o determine the reasonableness, the court should inquire as to whether the parties attempted to approximate the actual damages in confecting the agreement." *Keiser,* 880 So.2d at 236. The stipulated damages provision at issue was part of a standard employment contract drafted by Preis. It required Daily to pay $10,000.00 in damages in the event she resigned prior to the three-year term "[i]n consideration of the resources that have and will be expended by the Firm in your [Daily's] training and the fringe benefits provided." Therefore, on its face, the employment contract does not attempt to approximate damages that Preis would sustain as a result of Daily *leaving* the firm prior to the three-year term. Rather, it seeks to compensate, or reimburse, Preis for resources, training, and fringe benefits expended to or on behalf of Daily *during her employment*.

Similarly, the testimony of the parties does not reflect any effort on their part to approximate Preis's actual damages in the event Daily left the firm prior to three years. Rather, Daily testified that when she reviewed the employment contract at issue with Mr. Preis, he did not explain how the $10,000.00 figure was determined, and he

9

indicated to her that the stipulated damages provision was included "because he was so frustrated about losing attorneys -- taking different jobs and moving -- and he wanted to deter people from leaving, so he put that $10,000.00 to really make them think twice before they would leave."

Mr. Preis testified that "the whole gist" of the stipulated damages provision was "to get a three-year commitment from the lawyer. . . . What we really wanted . . . was for the lawyer to keep that commitment[.]" He further indicated that the purpose of the provision was to "pay the firm back for the losses that we sustained" as a result of *employing* the individual. There was no indication that the intent was to compensate Preis for damages it would sustain as a result of Daily *leaving* the firm prior to three-years, much less any evidence that Preis actually sustained damages as a result of Daily leaving. While Preis relies on evidence it suggests shows Daily was not profitable to the firm during her employment, there is no evidence indicating that the firm, as a whole was not profitable during Daily's employment, or that Preis suffered any actual loss as a result of Daily leaving prior to three years. For example, there is no indication that Preis was unable to make up income Daily generated by hiring additional staff, or otherwise, and there is no indication that any expenses directly attributable to Daily's employment continued after her resignation.

In concluding that the stipulated damages provision at issue did not reflect the parties' attempt to approximate actual damages when confecting the employment contract, the trial court reasoned:

> Moreover, if Daily had billed 2000 hours in the year at her stated rate of $160 per hour and collected 90%, she would have brought into the firm $288,000, which is more than the total expenses reflected on [the profitability analysis of Daily]. In that case, the firm would have suffered no damages based upon its profitability analysis. Since this is what was expected per the agreement, how could Preis, at the time of her hiring, approximate any damages using this analysis? Accordingly, the stipulated damages clause is unenforceable, as it does not reflect an attempt, at the time the contract was confected, to approximate actual damages.

We find that the evidence in the record reasonably supports the trial court's conclusion that the stipulated damages clause does not reflect an attempt by the parties to approximate actual damages in the event Daily resigned prior to the three-year commitment. Therefore, because the parties did not attempt to approximate actual damages when confecting the agreement, the stipulated damages provision requiring Daily to pay Preis $10,000.00 in the event of her early resignation is a de facto forfeiture of wages clause prohibited by La.R.S. 23:634(A) and unenforceable. *Keiser,* 880 So.2d 230.

We further note our indication in *Newsom*, 107 So.3d 781, that employment contracts requiring an employee to, upon resignation, *reimburse* an employer for training or other benefits that the employer otherwise provided to the employee, when the employer otherwise profited, or benefited, from providing training or other resources to the employee, are unenforceable, as they are unreasonable and against public policy.[3]  Specifically, we stated:

> Collecting debts owed by former employees to their employers for benefits accrued is a fundamentally different principle than requiring employees to reimburse for training and education that significantly benefited the employer. It should be noted that GDS [the employer] **benefited when its employees attended the training . . . because GDS was able to earn revenue as a result of its employees' new skills**. . . . The employees had no choice but to undergo said training and education in order to keep their employment. . . .  The terms in GDS' employee handbook are void as they are manifestly unreasonable and against public policy.

*Id.* at 789 (emphasis added).

In the instant case, the employment contract contemplated that Daily would bill approximately 2,000 hours per year "with a 90% realization," and it is undisputed that Preis generated income as a result of Daily's employment.  Daily testified that she

---

[3] *Newsom* involved an at-will employment contract and an employee handbook that required employees who resigned to reimburse the employer for various education and training expenses incurred during the twelve months preceding separation. While the instant case does not involve at-will employment, we find the concerns raised in *Newsom* regarding the reasonableness of requiring employees to reimburse employers for training expenses is applicable to our analysis in the instant case.

believed that Preis was profitable as a result of her employment, stating that the firm billed its clients $160-$165 per hour for her work, that she billed between 140 and 160 hours per month, and that she did not receive any indication that the firm was not able to collect on her billing. Similarly, Preis's director of finance, Daigle, indicated that Daily generated $164,241.75 in income for the firm during her employment with Preis.

The only evidence of expenses incurred by Preis as a result of Daily's employment, whether from training, fringe benefits, or otherwise, was Daigle's testimony and a report she prepared regarding Daily's *individual* income profitability. According to Daigle, Preis expended $79,847.01 in salary and benefits, to or on behalf of Daily, which included group health insurance, a cell phone, professional dues, and taxes. It also included an expense of $203 for Daily's required continuing legal education. This is the only evidence of any expense specifically attributed Daily's training. While there was testimony that Daily received some training from Landry, her supervising attorney, such as editorial revisions and other feedback regarding her work, Landry testified that she did not keep track of her time she spent training Daily.

In addition to expenses related to Daily's salary and benefits, Daigle also assigned a "general expense" allocation to Daily in the amount of a $198,681.00, which she explained was a per-head overhead calculation that was assigned equally to each attorney in the firm. No supporting documentation was provided. Therefore, according to Daigle, Daily had a negative individual profitability of $114,286.01.

Preis suggests that because Daily had a negative profitability of $114,286.01 during her employment with the firm, it suffered damages in this amount as a result of her leaving prior to the three-year term. However, the trial court rejected Daigle's "general expense" allocation and made a factual finding that Preis did not suffer any lost profits as a result of Daily's employment, reasoning as follows in its June 17, 2019 Ruling:

12

What the evidence did not show was how the general expenses were increased as a result of Daily being in the firm. Did the firm rely on her commitment to rent additional space, hire new support staff or incur any additional portion of the overhead amount? No doubt some expenses were incurred because of Daily, but a profitability calculation such as [Daigle's] does not approximate actual damages. No evidence was presented as to how many lawyers were employed in prior years and how those prior year general expenses compare with expenses incurred with the addition of Daily. Using [Daigle's] calculations, Daily's collections covered her salary and benefits plus $84,394.74 of general expenses. Did Preis actually expend more than $83,394.74 in general expenses because of Daily?

There is no doubt that a law firm invests in the hiring of new lawyers right out of law school. The mentoring of new lawyers is often time consuming and results in a supervising attorney working extra hours or sacrificing billable hours. Those items, if properly quantified, might be used to approximate actual damages, in addition, to other documented expenses. However, in this case, no such evidence was presented. . . .

We find no manifest error in the trial court's rejection of the "general expenses" allocation in calculating Daily's profitability, or its determination that Preis did not suffer any lost profits as a result of expenditures made to or on behalf of Daily while she was employed by Preis. Therefore, as in *Newsom*, 107 So.3d 781, we find the stipulated damages provision contemplating Daily's reimbursement of benefits and resources paid to or on her behalf in the event of her early resignation to be unenforceable and against public policy.

Preis also argues on appeal that the stipulated damages provision should be upheld because *Daily* failed to establish that Preis did not suffer damages. It directs us to Comment (d) to La.Civ.Code. art. 2009, which states that a defendant is not prevented "from proving that a plaintiff who seeks to avail himself of a stipulated damages provision actually has sustained no loss. It merely shifts the burden of proof on the issue of damages from the plaintiff to the defendant."

We disagree. First, we note that Preis's argument assumes the stipulated damages provision is otherwise enforceable; however, we have affirmed the trial court's ruling that it was not. Further, as previously noted, the trial court made a factual finding that Preis sustained no loss as a result of Daily's early resignation, because Preis

13

profited from Daily's employment. Specifically, the trial court concluded that "Daily's collections covered her salary and benefits plus $84,394.74 of general expenses," and found that there was insufficient evidence establishing that Preis incurred over $84,394.74 in general expenses directly related to Daily's employment. Therefore, regardless of which party bore the burden of proof, the evidence in the record supports the trial court's finding that Preis did not suffer any damages as a result of Daily's early resignation.

We therefore affirm the trial court's ruling that the stipulated damages provision in the employment contract was unenforceable and that Preis is not entitled to damages.

*Daily's Claim for Wages, Penalties, and Attorney Fees:*

We next consider Daily's claim for past wages she alleges Preis owes her, as well as penalties and attorney fees. Louisiana Revised Statutes 23:631(A)(1)(b) states,

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

"In the event of a dispute as to the amount due . . . , the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section." La.R.S. 23:631(B). In addition, La.R.S. 23:632 (emphasis added) states:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 **shall** be liable to the employee either for **ninety days wages at the employee's daily rate of pay**, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
>
> B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the

14

employer shall be subject to the penalty provided for in Subsection A of this Section.

C. Reasonable attorney fees **shall** be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

It was Daily's burden to prove wages due her under La.R.S. 23:631. *Keiser*, 880 So.2d 230. She established that Preis owed her $6,575.00 in gross wages at the time of her resignation. Further, the parties did not dispute that Preis could reduce the $6,575.00 in gross wages by certain offsets or other amounts, such as taxes and other benefits, thereby making the undisputed amount of wages owed $2,591.95. Therefore, Preis owes $2,591.95 in wages to Daily.

Daily also bears the burden of establishing her entitlement to penalty wages under La.R.S. 23:632.

To recover penalty wages, the claimant must show that (1) wages were due and owing, (2) demand for payment thereof was made where the employee was customarily paid, and (3) the employer did not pay upon demand. *Winkle v. Advance Products & Systems*, 98-694 (La.App. 3d Cir.10/28/98), 721 So.2d 983. A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error. *Loup v. Louisiana State School for the Deaf*, 98-0329 (La.App. 1st Cir. 2/19/99), 729 So.2d 689.

*Keiser*, 880 So.2d at 234-35.

As noted above, Daily established that Preis owed her $2,591.95 in wages. She further established that she made written demand on Preis for wages owed and that Preis did not pay upon her demand.

Rather than tendering the $2,591.95 in wages owed to Daily, Preis asserts that it was entitled to reduce, or offset, that amount by the $10,000.00 in stipulated damages it claims Daily owes to it under the employment contract, such that it was not required to pay anything to Daily. We have already affirmed the trial court's conclusion that the stipulated damages provision was unenforceable and that Daily does not owe

15

contractual damages to Preis. Therefore, Preis is not entitled to offset the $2,591.95 it owes to Daily by any other amounts.

While La.R.S. 23:632 contemplates an award of penalties to an employee when an employer fails to tender wages due, it also provides that an employer is not liable for penalties if the "employer's dispute over the amount of wages due was in good faith."

> This statute is penal in nature and, therefore, must be strictly construed in favor of the one receiving benefits under that chapter of the law. *Fontenot v. Reddell Vidrine Water Dist.*, 02-439 (La. 1/14/03), 836 So.2d 14. Equitable defenses are available, and penalty wages are not to be absolutely imposed. *Pace v. Parker Drilling Co. and Subsidiaries*, 382 So.2d 988 (La.App. 1 Cir.), *writ denied*, 383 So.2d 1016 (La.1980). Generally, when there is a good faith question of whether the employer actually owes past due wages, resistance to payment will not trigger penalty wages. However, when the employer is arbitrary, sets out procedural pitfalls for the employee, or is negligent in failing to pay past due wages, penalty wages will be assessed. *Id.*
>
> . . . .
>
> The provisions of La.R.S. 23:631 and 632 are for the protection of employees. *See Guidry v. Anderson-Dunham, Inc.*, 597 So.2d 1184 (La.App. 1 Cir. 1992). The main purpose of this legislation is to compel an employer to pay the earned wages of an employee promptly after his dismissal or resignation. *Wilson v. Inessa Stewart's Antiques, Inc.*, 96-2767 (La.App. 1 Cir 2/20/98), 708 So.2d 1132, *writ denied*, 98-0777 (La. 5/8/98), 718 So.2d 435. This legislation strictly forbids an employer from requiring an employee to forfeit his wages upon resignation and provides that the employee shall be entitled to the wages "actually earned" up to the time of their resignation. Even those employed under a collective bargaining agreement are protected by these statutory provisions. La.R.S. 23:640.
>
> Clearly, prompt payment of wages to employees protects the public interest. Therefore, as in [*Becht v.*] *Morgan* [*Buildings & Spas, Inc.*, 01-1091 (La.App. 1 Cir. 6/21/2002), 822 So.2d 56], GDS **[the employer] cannot rely on contract terms in direct violation of this well-established Louisiana law.** *See also Beard v. Summit Inst. for Pulmonary Med. and Rehab., Inc.*, 97-1784 (La. 3/4/98), 707 So.2d 1233.

*Newsom,* 107 So.3d at 787-89 (emphasis added).

Similarly, the first circuit, in *Henderson v. Kentwood Spring Water, Inc.*, 583 So.2d 1227, 1232-33 (La.App. 1 Cir. 1991) stated:

> While it is true that persons may waive personal rights that the law has established, they cannot by their contracts violate prohibitory law or derogate from law enacted for the protection of the public interest. LSA–

16

C.C. art. 7. "Any act in derogation of such laws is an absolute nullity." *Id.* We believe that LSA–R.S. 23:631 is such a prohibitory law. Where a statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void, generally an agreement founded on or for doing of such penalized act is void. *Fix–It–Shop v. Roy*, 68 So.2d 332 (La.App. Orleans 1953); *Ronaldson v. Moss Watkins, Inc.*, 13 La.App. 350, 127 So. 467 (La.App. 1st Cir.1930). We further find that the agreement has the direct effect of thwarting the legislative intent behind LSA–R.S. 23:631, which was enacted for the protection of the public interest. See *Elliott v. General Gas Corporation*, 229 La. 128, 85 So.2d 55 (La.1956). Consequently, the agreement is void as a matter of law and may not support an equitable defense under LSA–R.S. 23:631.

On appeal, Preis argues that penalty wages are not awardable because "it relied in good faith upon the terms of a written term employment contract which contained a stipulated damages clause." However, the trial court concluded that "the stipulated damages clause . . . does not reflect an attempt, at the time the contract was confected, to approximate actual damages." Therefore, the stipulated damages provision is unenforceable as it is a violation of public policy. *See Service Investors Inc.*, 9 So.3d 910, and *Keiser,* 880 So.2d 230. Because we affirmed the trial court's ruling with respect to the enforceability of the stipulated damages provision, we further find no error in the trial court's award of penalties. Preis's reliance on a contract provision that is against public policy is not a valid equitable defense to an imposition of penalties contemplated by La.R.S. 23:632.

Louisiana Revised Statutes 23:632(A) provides for penalties in an amount of ninety days wages at the daily rate of pay, or in the amount of full wages from the date of the employee's demand until paid, whichever is less. Here, the lesser amount would be ninety days wages at the daily rate of pay, rather than the full amount of wages from January 2018, when Daily made demand. The trial court determined the daily rate of pay was $295.45, and the parties do not dispute that amount on appeal. Therefore, we find no error in the trial court's award of $26,590.50 in penalty wages to Daily, which is ninety days of pay.

In addition to penalty wages, La.R.S. 23:632(C) allows an award of reasonable attorney fees to the employee, in the event the employee files a "well-founded suit for any unpaid wages" at least three days after making demand for payment. The trial court awarded Daily $15,036.50 in attorney fees. We review the trial court's findings of fact regarding whether Daily is owed attorney fees under La.R.S. 23:632(C) for manifest error. *Wortham v. Acadia Healthcare, LLC*, 14-718 (La.App. 3 Cir. 3/18/15), 160 So.3d 602, *writ denied*, 15-767 (La. 6/1/15), 171 So.3d 264.

On appeal, Preis argues that we should reverse the award of attorney fees because Daily "did not assert a 'well-founded' suit for unpaid wages." Given that Daily has a valid claim for unpaid wages and penalties under La.R.S. 23:631-23:653 we find no error in the trial court's decision to award attorney fees to Daily. Preis does not otherwise challenge the amount of attorney fees awarded, therefore, we affirm the trial court's award of attorney fees.

*Daily's Answer to the Appeal:*

Daily answered Preis's appeal seeking additional attorney fees for work necessitated by the appeal. "Because attorney fees were correctly awarded below, failing to award increased attorney fees for the additional work required for this appeal would be inconsistent with the judgment." *Frank v. Kent Guidry Farms*, 01-727, p. 5 (La.App. 3 Cir. 5/8/02), 816 So.2d 969, 973, *writ denied*, 02-1608 (La. 6/27/03), 847 So.2d 1273. We therefore award Daily with an additional $2,500.00 for work done on this appeal.

**DECREE**

For the reasons set forth above, we affirm the trial court's ruling in favor of Daily. We further award Daily with an additional $2,500 in attorney fees for work done in connection with this appeal. Costs of this appeal are assessed to Preis.

**AFFIRMED**.

18